**Meriel ROGERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43305.**

Court of Criminal Appeals of Texas.

Dec. 9, 1970.

Rehearing Denied Jan. 20, 1971.

James S. McGrath, Beaumont (by Court appointment), George Sladczyk, Jr., Port Arthur (by Court appointment), for appellant.

W. C. Lindsey, Dist. Atty. and John R. De Witt, Asst. Dist. Atty., Beaumont, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

This is an appeal from a conviction for murder with the punishment being assessed by the jury at life imprisonment.[1]

We are confronted at the outset with the most serious question in the case—whether the evidence is sufficient to corroborate the testimony of the accomplice witness Jones.

The body of Mrs. Eunice Mouton, the sole employee of the Home Laundry Substation at 9th and Kansas avenues in Port Arthur, was found in such building between 5:30 and 6 p. m. on July 14, 1967. It was shown the time of death was near 5:30 p. m.

The autopsy revealed she had been shot in the head and in the chest; that the cause of death was hemorrhaging from the gunshot wound entering the chest resulting in the severance of the coronary artery and the aorta.

Paul Jones, Jr., gave a detailed account of his activities on July 14 commencing near 7 a. m. when his wife came to his girlfriend's house where he had spent the night to get him to take her to work in his mother's 1963 maroon Pontiac automobile. During the course of the morning he picked up several friends and gave them rides in the Pontiac. While the exact time appears in conflict, Jones picked up the appellant Rogers in front of Antoine's Bar during the afternoon and agreed to take him home. Jones related he stopped at the Home Laundry Substation to get his cleaning and that he got into an argument with Mrs. Mouton about the cost of his cleaning, particularly an additional charge for removing the stains on a suit. Not having enough money he took only that part of his cleaning for which he could pay.[2] Upon his return to the car he reported his difficulties to the appellant. He then related the appellant let him smoke a cigarette which, unlike ordinary cigarettes, made him relax, and suggested to him that he rob Mrs. Mouton and recover his cleaning and take her money. The appellant brought him some old clothes from his house on West 10th Street and Jones changed into the same and then the two returned to the laundry substation. Jones then related he took his .22 cal. pistol and entered the store. When Mrs. Mouton came from the rear of the building he testified she "made a move" toward him and "the gun went off," Mrs. Mouton fell, he saw blood and fled to the car. There the appellant took the pistol from him and entered the store. As Jones started to drive off he heard "two pops" like "firecrackers." After driving a short distance he came back and the appellant came to the car with money in his hand, "a box" and some packages of clothing.

The appellant told him that he had gotten $13.00 and gave him $5.00. He then drove the appellant to his home and did not see him again that day.

Jones testified his memory of events after this was very indistinct. He did re-

1. The record reflects the alleged offense occurred on July 14, 1967, and an indictment was returned on July 27, 1967. The trial commenced on October 21, 1968, and concluded on October 30, 1968. The record on appeal did not reach this court until July 9, 1970, almost three years from the date of the offense. This cause was submitted to this court on November 25, 1970. The penalty assessed being in excess of 15 years the appellant has been unable to make bail pending appeal.

2. This testimony is somewhat inconsistent with his earlier testimony that on July 14 he had an argument with his girl friend about his wife coming to her house, and that he took a wig and a radio he had given his girl friend and pawned them for $25.00 and that he had won $4.00 or $5.00 playing pool that day.

call that later during the evening he shot his cousin twice with the same pistol and while being pursued by the officers near midnight he fled into his mother-in-law's home where he hid the pistol and where he was eventually arrested.

Such, we conclude, is a fair summary of the accomplice witness' testimony.

The appellant called Rickey Azora who related that he went to the laundry substation involved on the date in question at approximately 5:20 p. m. to get his cleaning and found no attendant there, but that Jones appeared and told him the attendant had gone to a grocery store and for him to come back later. When a short distance away on his way to his nearby home Azora heard two shots. He called the main office of Home Laundry and then returned to the substation where he observed the body of Mrs. Mouton lying at a spot where he had been a few minutes before. He testified that he saw no one other than Jones and did not observe any maroon Pontiac automobile in the vicinity.

This is a voluminous record and the State produced a myriad of detail about the investigation, the method of keeping laundry slips, etc., but none of it can be considered as corroborative of Jones' testimony as to appellant's guilt.

The State and the defense are substantially in agreement that the corroborative evidence, if any, comes from the testimony of Officers Edwards and Barnes.

Police Officer Earl Edwards testified that shortly after the discovery of Mrs. Mouton's body he and Officer Barnes began checking on some customers of the laundry who might have been there that afternoon. He revealed that while checking at the home of one such customer a block from the scene of the crime he observed Jones and the appellant whom he knew and a third unidentified male drive past at 6:30 p. m. in the Pontiac which belonged to Jones' mother.

Officer Willie Barnes, who was with Edwards, testified that the hour was 7 p. m. and that he saw only Jones and the appellant in the car. He also testified that sometime between 4 and 4:30 p. m. on the date in question he had observed the appellant and Jones in the same car at Grannis and West 10th Street, two blocks from the laundry substation.

Appellant points out that the testimony of Edwards and Barnes that they saw Jones and appellant together after the alleged crime is not corroborative of the accomplice testimony but is contradictive of the same.

The State points to the discovery of a black felt hat and two men's suits in the trunk of Jones' car during a search of such car on July 15 the morning after Jones' arrest. We fail to see how this evidence is corroborative. Jones was arrested some six hours after the alleged offense. He had been driving the automobile in question but was alone at the time of the arrest.

Article 38.14, Vernon's Ann.C.C.P., provides:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows a commission of the offense."

In Edwards v. State, 427 S.W.2d 629, 632, this court said:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of incriminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise, it is not. Dalrymple v. State, Tex.Cr.App., 366 S.

W.2d 576; Bradford v. State, 170 Tex. Cr.R. 530, 342 S.W.2d 319."

█ The corroborating testimony ·need not be sufficient in itself to establish the guilt of the accused, for if this were true the testimony of the accomplice would be of no value. The evidence is sufficient if it tends to connect the defendant with the offense. 2 Branch's Ann.P.C., 2d ed., Sec. 748, p. 45; Minor v. State, 108 Tex.Cr.R. 1, 299 S.W. 422; White v. State, 129 Tex. Cr.R. 59, 84 S.W.2d 465.

23 C.J.S. Criminal Law § 812(4)f., p. 118, provides:

"(P)roof that accused was at or near the scene of the crime at or about the time of its commission is admissible in corroboration of the testimony of the accomplice, and may tend to connect accused with the commission of the crime, so as to furnish sufficient corroboration to support a conviction when coupled with suspicious circumstances, such as unseasonableness of the hour, without reasonable explanation therefor * * * lack of apparent reason for such presence * * * being in the company of the accomplice * · * * subsequent flight, * * *."

█ The testimony independent of the accomplice witness' placed the appellant within two blocks of the scene of the crime approximately an hour or an hour and a half before the time of Mrs. Mouton's death and again within one block an hour or hour and a half after such time. Each time he was placed in the company of the accomplice witness. This testimony must be considered, however, in light of the fact that both the appellant and Jones lived in the neighborhood and Jones frequently picked up his friends while driving his mother's car.

In the case at bar there was no flight. In fact, the contrary appears. The day following the alleged offense when the appellant learned the police were looking for him he voluntarily surrendered. And none of the items taken in the murder-robbery were found in his possession.

Flight, possession of property taken in the commission of the offense and being in the company of the accomplice during early morning hours near the scene of the crime away from the vicinity where either lived distinguishes this case from Edwards v. State, supra, upon which the prosecution relies. Flight across a state line and the arrest of the defendant and the two accomplice witnesses together fifteen minutes after the robbery in possession of money also distinguishes Rymer v. State, 171 Tex. Cr.R. 656, 353 S.W.2d 35 from the case at bar. Flight and other circumstances were involved in Cawley v. State, Tex.Cr.App., 310 S.W.2d 340 and Bird v. State, Tex. Cr.App., 423 S.W.2d 919 and they are also distinguishable.

In Thomas v. State, 166 Tex.Cr.R. 331, 313 S.W.2d 311, the accomplice witness Cobb implicated the defendant and himself in the murder of the deceased and claimed he repainted the deceased's car red. Other testimony reflected that the three were seen together in a lounge and were observed leaving at the same time the night of the alleged offense. There this court said:

"It was shown that the appellant and Cobb were seen together prior and subsequent to the homicide, and one witness said he saw them in a red, or wine, colored automobile after the killing. One witness testified that he milked the appellant's cow on the morning after the homicide and did not see her at home at that time. There was other testimony showing that the deceased had cashed a check on the day before he was killed, and the manner in which Cobb was apprehended was shown; *but there was nothing in this testimony incriminating to the appellant.*" (emphasis supplied.)

In Roberd v. State, 161 Tex.Cr.R. 188, 276 S.W.2d 270, a sodomy case, it was held that testimony of witnesses that the accused and the accomplice witness had made a trip and were together at the time of the

alleged offense showed only an opportunity to commit the offense and was insufficient to corroborate the testimony of the accomplice witness. To the same effect is the recent accomplice to robbery case of Odom v. State, Tex.Cr.App., 438 S.W.2d 912.

We cannot conclude after a careful consideration that the evidence is sufficient to corroborate the accomplice witness.

The judgment is reversed and the cause remanded.