**Justin Seven CRUZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 69342.**

Court of Criminal Appeals of Texas, En Banc.

April 10, 1985.
Rehearing Denied May 29, 1985.

Jimmy Morris, Corsicana, for appellant.

Patrick C. Batchelor, D.A. & John H. Jackson, Asst. Dist. Atty., Corsicana, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

A jury found appellant guilty of capital murder. The jury answered the punishment issues affirmatively, and punishment was assessed at death. See Art. 37.071, V.A.C.C.P.

Appellant contends that the evidence is insufficient to support his conviction because there is no evidence corroborating the testimony of the accomplice.

Richard Williams, also known as John Zimmerman, was the State's chief witness

and was an accomplice witness as a matter of law. The court so charged the jury. Williams testified that he was hitchhiking in Arizona when he met appellant and appellant's wife, Sharon. They were delivering a car to a company in Richland, Texas, and Williams rode with them to Texas. The three delivered the car the day after Thanksgiving, in 1983, and camped out under a bridge at Richland Creek until they met Chuck Stringer. Stringer agreed to give them some work and let them stay in a building on his land. They stayed there for about two weeks and then moved into a shack owned by J.T. Lansford, the deceased. The shack was heated, and Lansford provided them with food and water.

Williams testified that appellant always carried a .22 caliber revolver and had also used Lansford's rifle to hunt for rabbits. Williams admitted that he told Stringer that he had killed a rabbit with one shot from a .22 caliber pistol. He said he had used appellant's gun.

Williams also said that Lansford carried a lot of money. On several occasions Williams had seen him pay for things with one hundred dollar bills. Appellant told him that Lansford kept money in an envelope under the mattress.

On Christmas Eve appellant told Williams that Lansford had propositioned his wife and offered her $100.00, and that he had to defend his honor. Williams said that appellant told him that he was going to rob and kill Lansford.

Around dusk on Christmas Eve, Williams was picking pecans and gathering kindling in the driveway, about halfway between the shack and Lansford's house. Lansford drove up, waved to Williams, and went inside the house. Williams saw the light in the house go on, heard four or five shots, and saw the light go out. When Williams went inside, he saw appellant standing over Lansford, who was lying on the floor, face up, with bullet holes in his forehead and left eye. Appellant was holding a .22 caliber rifle and a .22 caliber pistol. He handed Williams the rifle and told him to empty it into Lansford. Williams, who was about ten feet away, fired the remaining two rounds at Lansford's stomach. Appellant emptied the shells out of the pistol, put them into a box, and reloaded the pistol. He took Lansford's wallet out of his pocket, took "a wad of money" from the wallet, and put the wallet back into Lansford's pocket. Williams said that appellant then took beer out of the refrigerator, and looked into the cabinets. He said that he did not see appellant look under the mattress for money. Williams put the rifle up against the left side of the door and went back to the shack.

When he got to the shack, Sharon was packing the backpacks. Williams said that she knew what appellant was going to do. About ten minutes later, appellant pulled Lansford's truck up to the door of the shack and told his wife to put their things into it because they were leaving. Williams said he left his belongings in the shack and they left within two hours.

They drove to Dallas, where the truck ran out of gas, somewhere on Interstate 45. They then took a bus to El Paso and went to Mexico. Appellant paid for their meals and bus tickets. Williams, appellant and Sharon were arrested when they tried to cross the border into Calexico, California.

Chuck Stringer testified that he operated a truck stop in Angus, in the Richland Creek area. He met Williams walking by the creek when Williams asked him if Stringer had a dryer they could use to dry their clothes, which had gotten soaked in the rain. Williams introduced himself as John Zimmerman and asked Stringer if he could give them some work. It was very cold and Stringer told them they could stay in a large empty building on his property and he helped them out with a little work and food. They stayed there for about three weeks, until the week before Christmas, when they moved into a shack on Lansford's property.

Appellant and Sharon supported themselves by picking pecans, while Williams occasionally helped Stringer on wrecker calls. Stringer said that he, Lansford, and

Bill Thompson helped the three out by giving them food and work from time to time.

On Christmas Eve at about 11:00 p.m., Stringer drove to Lansford's place to deliver three fruit baskets. No lights were on and Lansford's truck was gone. Stringer said he knocked on the door of the shack and shined his lights down around Lansford's house, but saw no one.

Stringer testified that Williams told him that he had killed a rabbit with one shot and that he was surprised at how well the gun shot. Stringer also said that he had a .22 caliber Colt automatic, which disappeared some time within the three months before January, 1984. He did not know that any of the three took it, although he thought that appellant had the chance to do so.

Billy Thompson lived in Richland and had known Lansford for about twenty years. He said that Stringer asked him to let appellant and his wife pick pecans for him, which he did. Thompson said that he had seen appellant with a rifle and a pistol on occasion.

One day, Thompson took Williams with him to change some tires. When they returned home Thompson noticed that his .38 caliber pistol had disappeared from his truck. Thompson thought that Williams had taken the gun. He told appellant that he thought Williams had taken it and that he wanted it back. That afternoon appellant came out of the shack, gave him back the gun, and told him that Williams had taken it and put it behind the seat of the truck because he thought someone might steal it. Thompson said that Williams could not have hidden it behind the seat because appellant came out of the shack with the gun. He thought appellant was trying to "save me from getting on John."

Thompson visited Lansford until 4:00 p.m. on Christmas Eve, 1983. The next day, Thompson stopped by Lansford's place about 10:00 o'clock in the morning. The shack was empty and Lansford's pickup was gone. Finally, the third day after he had last seen Lansford alive, Thompson looked through the window in the front door of Lansford's house. Upon seeing two feet sticking up, he called the Sheriff.

Thompson said that Lansford carried his money in his wallet. He also said he had heard that Lansford kept money under a mattress.

Sheriff Bobby Ross testified that he took a statement from Williams and that Williams had cooperated with him in the investigation of the case.

Deputy Sheriff Leslie Cotton testified that on December 27, 1983, the day the body was discovered, she took pictures of the crime scene and dusted for fingerprints. She did not find appellant's fingerprints. Four empty shell casings were found lying on the floor—two next to the left shoulder, one under Lansford's back, and one next to his right shoulder. Cotton did not say what the caliber of the gun or bullet the casings were from.

Cotton also said that Lansford's truck was found abandoned on Interstate 45 in Dallas. She identified a wooden plaque, apparently a Christmas gift, addressed to Lansford from all three suspects. It was found in the truck.

Cotton testified that law enforcement officers attempted to determine whether or not any money had been taken from Lansford's premises, but that they could not determine what had been taken. No money was found on the premises or in Lansford's wallet, which was in his pocket.

M.G.F. Gilliland, a forensic pathologist, testified that she performed an autopsy on Lansford on December 28, 1983, and that he had been dead for "some time." There were eight gunshot wounds, five of which, individually, could have caused death. These five were located in the right temple, the left eye, the left cheek, the back of the head, and the left chest. The gunshot in the left eye had been fired at very close range. The remaining three wounds were located on the left arm, the leftside of the back, and behind the right shoulder. Gilliland said that there was blood on the forehead which could be mistaken for an injury to the forehead.

Larry Fletcher, a firearms examiner with the Dallas County Institute of Forensic Sciences, testified that he examined the bullets taken from Lansford's body. He said that some of the bullets were fired from RG and Rohm revolvers, and one of the bullets was fired from a Remington rifle.

Art. 38.14, V.A.C.C.P. directs that:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

The trial court charged the jury that Williams was an accomplice and that appellant could not be convicted without corroboration of Williams' testimony. Appellant contends that that corroboration is missing and the evidence is thus insufficient to sustain his conviction.

The test to determine the sufficiency of the corroboration is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of the other witnesses to ascertain if there is inculpatory evidence which tends to connect the accused with the commission of the offense. *Brown v. State*, 672 S.W.2d 487 (Tex.Cr.App.1984); *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968).

In the instant case six witnesses, aside from the accomplice, Williams, testified for the State. Stringer's testimony provided the background information about how appellant, Sharon, and Williams met Lansford. His testimony that Williams called himself John, and told him about his prowess with a .22 pistol in shooting a rabbit, tended to favor appellant. His testimony did not connect appellant to the offense.

Thompson discovered Lansford's body on December 27 and had last seen Lansford alive on December 24. The pathologist did not testify to the time of death, but from Thompson's testimony it appears that Lansford was killed sometime between December 24 and December 27. The three transients had departed by then.

The testimony other than the accomplice's testimony, explains the relationship between Lansford and the three transients, but does little else. The State did not prove, either through scientific evidence or witness' testimony, that appellant had anything to do with the murder.

The State relies mainly on five facts as corroboration tending to connect appellant to the murder: (1) appellant was seen with a pistol and a rifle some time prior to the murder; (2) the deceased was shot with a pistol and a rifle; (3) appellant, Sharon, and the accomplice disappeared from the premises around the time Lansford was murdered; (4) a Christmas gift from the three was found inside Lansford's abandoned truck in Dallas; (5) the three suspects were arrested in California, near Mexico.

No connection was shown between the rifle and pistol appellant had been seen with at some, unspecified time prior to the murder, and the weapons used to kill Lansford. The State never even proved the caliber of the murder weapons or bullets. Similarly, the State does not explain the significance of the discovery of the Christmas gift in the truck, in connecting appellant to the murder. The fact that it corroborates the accomplice testimony does not connect appellant to the murder. Corroborating extraneous matters which do not tend to connect the accused to the crime is insufficient. *Walker v. State*, 615 S.W.2d 728 (Tex.Cr.App.1981). Appellant was never linked to the truck, and the discovery of the truck and the Christmas gift was never connected to the murder.

Proof that an accused was present at or near the scene of a crime, when coupled with other suspicious circumstances, including subsequent flight, may tend to connect the accused to the commission of the offense. *Cawley v. State*, 166 Tex.Cr.R. 37, 310 S.W.2d 340 (1957); *Edwards v. State*, 427 S.W.2d 629 (Tex.Cr.App.1968). No one testified as to when they last saw appellant on Lansford's premises, much less with the accomplice. Furthermore, since appellant was living in

the shack about 200 yards from Lansford's house, the significance of his presence there as part of the corroboration of the offense is slight at best. See *Walker v. State*, 615 S.W.2d 728 (Tex.Cr.App.1981); *Rogers v. State*, 461 S.W.2d 399, 402 (Tex. Cr.App.1971). Even if we infer flight from the fact that appellant was arrested some time afterwards, (although the record does not say when), in California, this fact alone does not connect him to the murder. The State did not show that the combined and cumulative weight of the evidence, furnished by non-accomplice witnesses, tended to connect appellant to the murder.

■ The State did not find or produce any weapons; the calibers of the weapons that killed Lansford were never shown; there was no proof that anything was taken from Lansford's house because no one positively testified as to what had been there prior to the murder; appellant was not found to be in possession of any of Lansford's property; and appellant's fingerprints were never found inside the house, nor apparently, in Lansford's truck. When the accomplice testimony is eliminated, there is essentially nothing to connect appellant to the murder. The fact that he had lived there and had gone away around the time of the murder is of some significance, but, by itself, is not sufficient to connect appellant to the murder.

Putting the accomplice witness testimony aside, the only evidence we are left with is scanty scientific and investigatory evidence, none of which links appellant to the murder. *Walker*, supra, is a very similar case. The corroborating evidence only corroborated extraneous matters which did not link the accused to the offense. Compare the evidence linking the accused in *Mitchell v. State*, 650 S.W.2d 801 (Tex.Cr. App.1983); *Eckert v. State*, 623 S.W.2d 359 (Tex.Cr.App.1981); and *Edwards*, supra. The State has not shown evidence connecting appellant to the murder. We are constrained to reverse.

The judgment of conviction is set aside and is reformed to reflect an acquittal. *Burks v. United States*, 437 U.S. 1, 98

S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

CAMPBELL and WHITE, JJ., dissent.

## OPINION ON STATE'S MOTION FOR REHEARING

W.C. DAVIS, Judge.

■ The State contends that the evidence sufficiently corroborates the testimony of the accomplice witness, Richard Williams. Specifically, the State alleges that our original opinion is incorrect in holding that the evidence does not tend to connect appellant to the crime, and that our opinion is inaccurate in stating that the caliber of the murder weapons or bullets was not proved.

We agree that State's Exhibit No. 8, the autopsy report, which was introduced into evidence, shows that Lansford died as a result of wounds caused by .22 caliber bullets. However, the correctness of our original opinion is not affected by proof of the caliber of the bullets. As set out in our original opinion, when the accomplice witness testimony is set aside, there is no evidence to connect appellant with the weapons or bullets used to kill Lansford— the .22 caliber weapons or bullets—and nothing to connect appellant to the murder. The corroborating evidence corroborated extraneous matters which did not link appellant to the offense.

The State's motion for rehearing is denied.