Gary **MEHAFFEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 6–85–123–CR.

Court of Appeals of Texas, Texarkana.

Jan. 13, 1987.

---

James E. Davis, Texarkana, for appellant.

John F. Miller, Jr., Dist. Atty., Texarkana, for appellee.

CORNELIUS, Chief Justice.

Gary Mehaffey was convicted of conspiracy to commit capital murder. Trial was to a jury which assessed punishment at fifty years imprisonment.

On appeal Mehaffey contends that the evidence is insufficient because there was inadequate corroboration of accomplice testimony, the trial court should have instructed the jury that Darren Jones was an accomplice and that David Coleman could have been an accomplice, and the court erred in admitting certain evidence and allowing certain comments by the prosecuting attorney. We overrule these contentions and affirm the judgment.

The indictment charged that Mehaffey and Sammy Hamilton agreed that Hamilton would kill Mehaffey's mother for the promise of remuneration, and that Mehaffey and Hamilton committed an overt act pursuant to the agreement by delivering a 30.30 rifle from Mehaffey to Hamilton.

The State's evidence was from Sammy Hamilton and others. Hamilton testified that he stopped at David Coleman's home in Bowie County on April 10, 1983, to discuss buying a boat; that Mehaffey, who was living in Coleman's home at the time, and Coleman were working on a boat in the yard; that Mehaffey said to him, "I want you to do a little job for me. I want you to kill my mother and dad. ... Just kill the bitch. Don't worry about the old man. He'll worry himself to death." Hamilton also testified that Mehaffey offered him a

boat, motor and trailer as payment for the murder; that Mehaffey delivered to him at his home a 30.30 lever-action rifle with which to perform the murder; and that later he and Mehaffey took the rifle into the countryside and test-fired it by shooting through a mailbox. Hamilton also stated that he hired Darren Jones to help him kill Mrs. Mehaffey and that he told Jones it was a "mafia" job; that he and Jones went twice to Mrs. Mehaffey's home but could not bring themselves to kill her; that he returned the rifle to Coleman's house where Gary Mehaffey was then living; and that he told Gary Mehaffey that Mrs. Mehaffey was not at home when he and Jones went to kill her.

David Coleman testified that he saw Mehaffey and Hamilton have a conversation in Coleman's yard on the date of the alleged agreement; that Mehaffey owned a boat, motor and trailer which could have served as the payment for the murder as claimed by Hamilton; that Mehaffey owned and kept in Coleman's home a 30.30 lever-action rifle which was removed from the house after the conversation between Mehaffey and Hamilton and which was returned two weeks later; and that Mehaffey became very angry any time Coleman mentioned Mehaffey's parents.

Darren Jones testified that Hamilton offered him $800.00 to help him kill Mrs. Mehaffey as a "mafia" job; that Hamilton later told him Gary Mehaffey wanted it done; that Hamilton delivered to him a 30.30 lever-action rifle to use in shooting Mrs. Mehaffey; that he took the loaded rifle two or three times to Mrs. Mehaffey's home but could not bring himself to kill her; and that he returned the rifle to Hamilton, who returned it to Coleman's home.

Deputy Sheriff Joe Money identified the mailbox through which bullets had been fired as claimed by Hamilton in his testimony, and testified that he removed a .30 caliber bullet from a tree behind the mailbox. Firearms expert John Bean testified the bullet had characteristics similar to one which would have been fired from a rifle of the type given by Mehaffey to Hamilton.

Mrs. Elma Mehaffey testified that her son Gary had been rebellious, resentful of authority, and unwilling to accept discipline in his youth; that she and her husband owned real and personal property valued at $946,-500.00 which Gary and his sister would inherit; and that, although she loved Gary, she was afraid of him and he hated her.

A person is guilty of conspiracy to commit murder if, with intent that the offense be committed, he agrees with one or more persons that they, or one of them, engage in conduct which would constitute the offense, and he, or one of them, performs an overt act pursuant to that agreement. Tex. Penal Code Ann. § 15.02 (Vernon 1974). Conspiracy to commit murder is elevated to conspiracy to commit capital murder where it is committed for remuneration or for promise of remuneration, or where the person employs another to do so for remuneration or promise of remuneration. Tex. Penal Code Ann. § 19.03(a)(3) (Vernon Supp. 1987).

Sammy Hamilton was not indicted and was granted immunity. The court charged the jury that he was an accomplice as a matter of law, and that it could not convict Mehaffey unless Hamilton's testimony was corroborated by other independent evidence tending to connect Mehaffey with the offense. *See Holladay v. State,* 709 S.W.2d 194 (Tex. Crim. App. 1986). Mehaffey contends there was no such corroboration.

The corroboration is not sufficient if it merely shows the commission of the offense. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). However, the evidence need not directly link the accused to the crime or be sufficient in itself to establish his guilt, *Thompson v. State,* 691 S.W.2d 627 (Tex. Crim. App. 1984), and it is not necessary that the accomplice be corroborated in all of his testimony or as to every element of the offense. *Deleon v. State,* 635 S.W.2d 771 (Tex. App.—Corpus Christi 1982, no pet.). We disregard the testimony of the accomplice and then examine the record to see if there is other inculpatory evidence tending to link the accused

with the commission of the offense. *Vertz v. State*, 702 S.W.2d 196 (Tex. Crim. App. 1986), *citing Cruz v. State*, 690 S.W.2d 246 (Tex. Crim. App. 1985). If there is, the corroboration is sufficient. We view the nonaccomplice evidence as a whole to determine the sufficiency of corroboration. *Wolf v. State*, 674 S.W.2d 831 (Tex. App.—Corpus Christi 1984, pet. ref'd).

Eliminating the testimony of the accomplice Hamilton, there is evidence that Mehaffey and Hamilton had a conversation in Coleman's yard at the time of the alleged agreement to commit the murder; that Mehaffey owned a boat, motor and trailer which could have constituted payment to Hamilton as alleged; that Mehaffey owned a 30.30 rifle which was delivered to Hamilton within the time frame of the alleged offense, and which was returned by Jones to Coleman's home where Mehaffey lived; and that a .30 caliber bullet was found embedded in the tree where Hamilton testified he test-fired the 30.30 rifle. The cumulative effect of this evidence tends to link Mehaffey to the alleged offense, and is sufficient corroboration. *See Thompson v. State*, supra; *Brown v. State*, 672 S.W.2d 487 (Tex. Crim. App. 1984).

■ The trial court submitted to the jury the issue of whether Darren Jones was an accomplice as a matter of fact. Mehaffey argues that the jury should have been instructed that Jones was an accomplice as a matter of law.

A person is not an accomplice unless he can be prosecuted for the offense with which the accused is charged. *Carrillo v. State*, 591 S.W.2d 876 (Tex. Crim. App. 1979). Where there is a question whether a witness is an accomplice it is proper to submit the issue to the jury as a question of fact, even though the evidence may strongly point to the conclusion that the witness is an accomplice. *Carrillo v. State*, supra; *Arney v. State*, 580 S.W.2d 836 (Tex. Crim. App. 1979).

■ The gravamen of the offense charged against Mehaffey was his agreement with Sammy Hamilton and the subsequent overt act with the rifle pursuant to

that agreement. While the evidence shows that Jones could have been guilty of some other offense, there is no evidence that he was a party to any agreement with Mehaffey. Thus, the trial judge did not err in failing to instruct that Jones was an accomplice as a matter of law. We also find that, under the evidence as shown in the record, the trial court did not have a duty to instruct the jury that David Coleman could have been an accomplice witness as a matter of law.

■ Mehaffey next claims error because the trial court admitted evidence relating to his character and extraneous acts. Mrs. Elma Mehaffey testified that she had had problems with her son beyond what would be expected from the average child; that she could not discipline him and his reaction to parental authority was rebellion; that Gary hated her; and that he holds his parents responsible for all of his problems in life. The State also introduced a Halloween card sent by Gary to his mother implying that she was a bitch.

The evidence summarized above was relevant to the issue of the hostility and ill will which Mehaffey felt toward his parents, and of his specific hatred for his mother. Thus, it was admissible to show Mehaffey's motive in arranging for his mother's murder. *See Brandley v. State*, 691 S.W.2d 699 (Tex. Crim. App.1985), and cases there cited.

■ In his final two points of error, Mehaffey argues that the court erred in overruling his objections to certain argument by the prosecutor. The first objection occurred after the following comments:

[T]he first two people you saw were Hamilton and Jones. These men are not preachers. They are not deacons. They are not civic leaders, but that's not who you hire to commit murder. I didn't choose these people. Gary Mehaffey chose these people to do his bidding.

I called them to court to tell the truth. Yes, they were given immunity, and I expect Mr. Davis to devote a great deal of his time on final argument to the fact

that they can't be believed because they traded their responsibility for immunity, but I want to make this point to you. Yes, we did give them immunity, because we wanted the truth out.

Defense counsel then objected to the argument as being outside the record and as unsworn testimony. The objection was overruled. The prosecutor then continued his jury argument, commenting:

> And, you know, there is almost an evil genius involved in the picking of Sammy Hamilton, because even if Sammy is caught, who is going to believe Sammy? Now I didn't dress him up. I didn't polish him up. I didn't make him sit down ...

At that point defense counsel again objected on the ground that the prosecutor was arguing unsworn testimony.

Mehaffey argues that the prosecutor was stating a personal opinion concerning the truth of the testimony given by Hamilton and Jones, thus attempting to impermissibly bolster their testimony. We find that the argument can reasonably be construed not as bolstering, but as pointing out the necessity of granting immunity to accomplice witnesses in order that the existence of a conspiracy can be proved. In any event, considering the record as a whole we conclude that the argument was not so harmful to Mehaffey that it could have denied him a fair trial.

For the reasons stated, the judgment of the trial court is affirmed.