Hugo Alberto HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–93–184–CR.

Court of Appeals of Texas,
Corpus Christi.

Sept. 7, 1995.

Rehearing Overruled Oct. 12, 1995.

Walter J. Pink, Houston, for appellant.

Luis V. Saenz, District & County Attorney, Brownsville, for appellee.

## OPINION

YANEZ, Justice.

A jury found appellant guilty of murdering Jesus Verduzco and assessed his punishment at 35 years in prison. Appellant complains about the admission of evidence, the effectiveness of counsel, and the sufficiency of the evidence. We sustain appellant's fourth point of error, reverse and acquit.

■ In point four, appellant contends the trial court erred in overruling his motion for instructed verdict. A challenge to a ruling on a motion for instructed verdict is actually a challenge to the sufficiency of the evidence which will be considered as a sufficiency challenge. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990). In reviewing the sufficiency of the evidence, an appellate court considers all the evidence in the light most favorable to the verdict. *Madden,* 799 S.W.2d at 686.

■ Appellant specifically asserts that the evidence is insufficient to corroborate the testimony of accomplice witness Martin Flores. In Texas, the testimony of an accomplice witness must be corroborated. Tex. Code Crim.Proc.Ann. art. 38.14 (Vernon 1979). Article 38.14 provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

■ Flores, who was co-indicted with appellant for the offense, was an accomplice as a matter of law. *Solis v. State,* 792 S.W.2d

95, 97 (Tex.Crim.App.1990); *Burns v. State,* 703 S.W.2d 649, 651–52 (Tex.Crim.App.1985); *McCloud v. State,* 527 S.W.2d 885, 886–87 (Tex.Crim.App.1975).

■ The State asserts that we need not apply the accomplice witness standard in assessing sufficiency because appellant failed to request an accomplice witness instruction and no accomplice witness instruction was included in the jury charge.[1] The State is wrong. Even though a defendant has not complained about the lack of an accomplice witness instruction, the appellate court, in passing upon the sufficiency of the evidence, must treat the testimony of an accomplice as that of an accomplice and find sufficient evidence from other sources tending to connect the defendant to the commission of the offense. *Hammonds v. State,* 316 S.W.2d 423, 424 (Tex.Crim.App.1958); *Pitts v. State,* 85 Tex.Crim. 14, 210 S.W. 199, 199 (1919). Accordingly, we must review the facts and determine whether the accomplice testimony is adequately corroborated.

The record shows that in April 1988, the bullet-riddled body of Jesus Verduzco was found alongside a Cameron County Highway. Shortly thereafter, the grand jury jointly indicted Martin Flores and appellant for the murder. Appellant failed to appear for arraignment, but Flores was tried and convicted in August 1988. Appellant was captured four years later and tried in January 1993. At appellant's trial, the State called accomplice Flores and a number of non-accomplice witnesses.

Teresa Reyes, Verduzco's wife, testified that on April 5, 1988, Verduzco and Flores, a neighbor, were working on some cars at their house. About 7:30 p.m., Reyes went to her sister-in-law's house. Sometime later that evening, Flores and Verduzco also left the house. Reyes returned home around midnight and went to bed. Around 12:25 a.m., Verduzco came home and asked Reyes for money to go drinking. From the bedroom, Reyes could hear voices. She recognized only Flores' voice, but Verduzco told her he was with Flores and appellant. Reyes testi-

---

1. *See Saunders v. State,* 817 S.W.2d 688, 692–693 (Tex.Crim.App.1991) with regard to whether the

failure to charge on accomplice witness testimony constitutes fundamental error.

fied that Verduzco had been drinking but was not drunk. Verduzco left after speaking to his wife.

Gabriel Anguiano testified that he lived off Boca Chica highway about three miles outside of Brownsville. On April 6, 1988, around 2:40 a.m., Anguiano heard one or two shots from a shotgun and then, with no time between the shots, more than three shots from a handgun. He could tell the shots were coming from Boca Chica highway but did not see anything upon looking out of his house. The next morning, he found Verduzco's body on the side of Boca Chica highway near his home.

Dr. John Dahm performed an autopsy on Verduzco. Dahm testified that Verduzco was shot a large number of times with a shotgun and a medium caliber gun. Verduzco's right chest suffered two shotgun injuries which Dahm believed were inflicted from a range of probably less than two feet. Dahm believed the weapon was a pump or double-barrel shotgun. Verduzco also had two shotgun injuries and five medium caliber shots to his head. His skull was in pieces, and the brain was "literally blown to bits." The victim's blood alcohol content was .376. Dahm estimated that the time of death was five to 24 hours prior to the autopsy which was performed at 11:30 a.m. on April 6.

Ricardo Cisneros, who did auto body work, testified that he knew Verduzco, appellant, and Flores. He saw Flores and appellant, but not Verduzco, on April 5, 1988, about 8:00 p.m. Appellant and Flores came by his place to find out if two trucks which appellant had previously left with Cisneros were ready. Cisneros told him they were, and appellant said he would come by the next day to pick them up. On that evening, appellant and Flores were drinking Lite Beer. Cisneros testified that appellant did not show up the next day to retrieve his trucks as planned. The trucks remained at Cisneros' place until weeks later when appellant's wife or mother picked them up. Three months before, appellant had shown Cisneros a 12–gauge sawed-off pump shotgun.

Andres Salgado testified that on April 5, 1988, he worked at a small grocery store that rented videos. Appellant, with Flores, rented two video-cassettes around 8:00 p.m. The videotapes were due the next day but were never returned.

Flores, the accomplice, then testified that in 1988 he had been convicted of Verduzco's murder and sentenced to twenty-five years in prison. He was released on parole in February 1992. He testified that he did not want to testify at appellant's trial but appeared because he was subpoenaed. He did not remember witnesses testifying during his own trial, nor did he remember evidence being presented. He identified appellant in the courtroom. He testified that Verduzco had been a mechanic who lived next to him on Elena Street in Brownsville. He could not remember how long he had known Verduzco or when Verduzco became his neighbor. Flores remembered that he had met appellant in Matamoros but could not remember when. He could not remember where appellant lived. Flores could not remember getting together with appellant and Verduzco. Flores testified that he could not remember "what happened" because he had nerve problems when he was in prison. He could not remember the last time he saw Verduzco. He did not remember being in court or testifying at his own trial in his own defense. After the prosecutor showed him a transcript of what purported to be his prior testimony, Flores remembered who his attorney had been, but he still did not remember testifying. The prosecutor showed Flores three prior statements Flores purportedly made. Flores looked at them but could not remember their contents or signing them. The State passed the witness, and appellant's counsel asked no questions.

John Corr testified that he was the court reporter during Flores's 1988 trial and that Flores had testified under oath at that trial. Over appellant's objection, the trial court permitted the State to read Flores's former testimony to the jury.[2]

---

**2:** Appellant complains about the admission of this testimony in his first two points of error. Because we reverse on other grounds, we need

not address the merits of these complaints. Tex. R.App.P. 90(a).

In that testimony, Flores testified how he came to know Verduzco. They had a close relationship, like brothers. Flores only knew appellant for three months. On the day of the killing, Flores went to Verduzco's to help him fix a van. About 7:30 p.m., appellant showed up with some beer. After a while, they needed more beer, so Flores left with appellant to get some. While they were out, they went to "Chato's place" to check on two trucks appellant was having painted. They returned to Verduzco's, and then about 9:30 went to get some videos. They then came back to Verduzco's around 10:15 but all three then left to go to a bar.

When they got to the bar, Verduzco and appellant greeted different friends. At some point, appellant told Verduzco that one of the men owed appellant $36,000. When Verduzco told appellant to "tell him to pay you," appellant said he did not want to be paid. Appellant said he just wanted to kill him. The three then left the bar and cruised around during which time appellant gave Verduzco a pistol. They agreed they were going to go back and kill the man. They went back. While Flores and appellant waited in the car, Verduzco, leaving the gun in the car, went into the bar to see if the man was there. Verduzco was in the bar about five minutes when appellant and Flores saw the man they seemed to be waiting for leaving the bar. Verduzco then came out and said the man was not in the bar. Appellant told Verduzco that they had seen the man come out, but Verduzco said he was not in there. Appellant and Verduzco then argued. Appellant then started the car and they headed for Boca Chica. Soon they stopped, apparently to urinate, and got out. Appellant had his twelve-gauge shotgun and looked at Verduzco, who asked if appellant was "going to give it to" him. Appellant called Verduzco a "son of a bitch" and a "snitch" and then shot Verduzco twice with the shotgun. Flores believed Verduzco was dead and feared for his own safety. Appellant then pointed his shotgun at Flores. Instead of shooting, appellant handed Flores a pistol and told him to shoot Verduzco. Flores fired two or three times at a shadow, really not wanting to hit Verduzco. Appellant then took the gun from Flores, and they left for

Matamoros. Later, Flores realized he had lost one of his sandals at the murder scene. Flores did not think he killed Verduzco because Verduzco was already down and would not move. Flores would not have fired if appellant had not forced him.

Officer Abel Perez testified that he investigated the case. Shortly after the offense, he spoke to appellant's wife who told him that she did not know of appellant's whereabouts. Perez discovered a can of Lite Beer by Verduzco's body. Perez attempted to find appellant but could not. This was the extent of the evidence presented.

The test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Cockrum v. State,* 758 S.W.2d 577, 581 (Tex. Crim.App.1988); *Reed v. State,* 744 S.W.2d 112, 125 (Tex.Crim.App.1988). The combined cumulative weight of the incriminating evidence furnished by the non-accomplice witnesses may be sufficient to tend to connect the accused to the offense. *Reed,* 744 S.W.2d at 126. It is not necessary that the corroboration directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.*

The non-accomplice evidence that suggests appellant was possibly involved in the offense comes from several sources. First, there is evidence from Verduzco's wife that appellant, Flores, and Verduzco were together about two hours before the killing. Verduzco told his wife of his intent to go drinking with the other two. Based on Verduzco's blood alcohol content at the time of death, Verduzco had indeed gone drinking. Gabriel Anguiano, the man who heard gunfire near his home, testified that the shots rang out in rapid succession. Assuming that these shots were the ones which killed Verduzco, this evidence when combined with Dr. Dahm's testimony that two different guns were used to kill the victim, supports an inference that two persons, not one, shot Verduzco. Finally, it can be inferred from the testimony of

Ricardo Cisneros, the man who did auto body work, and Perez's testimony that appellant's wife purported not to know appellant's whereabouts that appellant's departure was unexpected and occurred immediately after the killing. Such inference is bolstered by appellant's failure to return his rented movies and his failure to inform his wife of his whereabouts shortly after the murder, before any warrant was issued. Some evidence was also introduced showing that appellant possessed the type of gun, a pump-action shotgun, which could have been used in the murder. Thus, in sum, the non-accomplice testimony, viewed most favorably to the State, shows (1) appellant and Flores were with Verduzco approximately two hours before the killing, (2) two persons killed Verduzco, (3) appellant departed without explanation after Verduzco was killed, (4) in the past, appellant possessed one type of weapon (pump shotgun) used to kill Verduzco, and (5) appellant drank Lite Beer, and a Lite Beer can was found by Verduzco's body.

The issue before us is whether this evidence tends to connect appellant to the commission of the offense. We find it does not. The Court of Criminal Appeals discussed the sufficiency of accomplice corroboration under similar facts and found the evidence insufficient to corroborate. *See Cruz v. State,* 690 S.W.2d 246–50 (Tex.Crim.App.1985).

In *Cruz,* the defendant, a transient, lived on land owned by Landsford, the victim. According to the accomplice, the defendant "always carried" a .22 caliber rifle. After Landsford allegedly propositioned the defendant's wife, the defendant told the accomplice that he was going to kill Landsford. On Christmas eve, the defendant and accomplice shot Landsford. Thompson, a friend of the victim, testified that he had seen appellant with a rifle and pistol on occasion. The medical examiner testified that some of the bullets in the victim's body were fired from RG and Rohm revolvers and one was fired from a Remington rifle. The defendant departed around the time Landsford was murdered. Landsford's truck was found missing after his death. A Christmas gift from the defendant was found in the truck. The *Cruz*

Court noted that proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with suspicious circumstances, including subsequent flight, may tend to connect the accused to the commission of the offense, but nonetheless found that, "The fact that [Cruz] lived there and had gone away around the time of the murder is of some significance, but, by itself, is not sufficient to connect appellant to the murder."

The Court recited well established law. The mere fact that the non-accomplice testimony corroborates the accomplice testimony does not mean that the non-accomplice testimony connects the defendant to the offense. *Cruz,* 690 S.W.2d at 250. Corroboration of extraneous matters which do not tend to connect the accused to the crime is insufficient. *Id.*

The evidence here shows that appellant was with Verduzco about two hours before the offense and departed after the offense. Nonetheless, that evidence does not directly nor circumstantially place appellant where the crime occurred or with Verduzco at the time of the offense. That appellant at some earlier time had a weapon like the one Verduzco could have been killed with and that two persons may have shot Verduzco does not link appellant to the offense. Appellant's unexplained departure does not connect him to the murder. Nor does the fact that appellant drank the same brand of beer as that found by the victim's body. While these circumstances may be suspicious, they do not tend to connect appellant to the commission of the offense. We find the evidence insufficient to corroborate the accomplice testimony and sustain appellant's fourth point of error.

Having found the evidence insufficient to corroborate the accomplice testimony, we sustain appellant's fourth point, reverse the judgment of the trial court, and order an acquittal.

SEERDEN, C.J., DORSEY, J., and NOAH KENNEDY, Assigned Justice,[3] join in the majority opinion.

---

**3.** Assigned to this Court by the Chief Justice of

the Supreme Court of Texas pursuant to Tex.

Dissenting Opinion by FEDERICO G. HINOJOSA, Jr., J., joined by CHAVEZ and RODRIGUEZ, JJ.

FREDERICO G. HINOJOSA, Jr., Justice, dissenting.

I respectfully dissent. I disagree with the majority's conclusion that the evidence is insufficient to corroborate the testimony of accomplice witness Martin Flores. *See* TEX. CODE CRIM.PROC.ANN. art. 38.14 (Vernon 1979) (testimony of accomplice witness must be corroborated). The majority holds that the evidence does not directly or circumstantially place appellant where the crime occurred or with Verduzco, and that, while suspicious, the circumstances do not tend to connect appellant to the commission of the offense. I disagree.

Appellant was in Verduzco's presence two hours before the killing, and Verduzco told his wife they planned to go drinking. And while we do not know from the independent evidence that appellant and Flores went with Verduzco "to go drinking," we know that was Verduzco's plan. There is no evidence that the men deviated from that plan. Indeed, the victim's blood alcohol level shows that he did "go drinking."

The circumstantial evidence supports the theory that two persons were involved in shooting Verduzco. We know from the non-accomplice testimony that Flores was involved; Flores' sandal was found at the scene of the murder. The independent evidence does not place Verduzco with anyone other than appellant and Flores. Inferentially, appellant was the second shooter.

Furthermore, there is some evidence from which it can be inferred that appellant "fled" between the time Verduzco attempted to get money from his wife to go drinking and the following day. This inference arises from the following evidence. Appellant told Cisneros he would return the next day to pick up his trucks. He did not. Appellant did not return the movies he rented the night before. After the incident, appellant's wife told the police she did not know where he was.

When unexplained, flight has long been deemed indicative of a consciousness of guilt. *Cawley v. State,* 166 Tex.Crim. 37, 310 S.W.2d 340, 342 (1957). "The wicked flee when no man pursueth." *Id.* (citing Proverbs 28:1).

The non-accomplice testimony also shows that appellant drank Lite Beer on the evening before Verduzco was killed. A can of Lite Beer was found by Verduzco's body. Furthermore, appellant was known to have possessed the type of weapon (pump shotgun) which was used to kill Verduzco.

Appellant's presence with Verduzco shortly before the killing and appellant's immediate flight are strong circumstances of guilt. The other factors are consistent with appellant's guilt and, in combination with flight and likely presence, strengthen the circumstances against appellant. These facts tend to connect appellant to the commission of the offense.

I would hold that the evidence is sufficient to support the conviction. Accordingly, I would overrule appellant's fourth point of error.

By his third point of error, appellant contends that trial counsel was ineffective for, among other reasons, not requesting an accomplice witness instruction.

We review the effectiveness of counsel by the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted in *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986). *Strickland* requires a two-step analysis for ineffective assistance of counsel claims. The reviewing court must first decide whether trial counsel's performance failed to constitute reasonably effective assistance, or, in other words, whether attorney representation fell below objective standards of reasonableness under prevailing professional norms. If the reviewing court answers this question affirmatively, then it must decide whether there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. *Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim.App.1992). "Reasonable

Gov't Code Ann. §§ 74.003 and 75.002 and Rule 79(d), Texas Rules of Appellate Procedure.

probability" is defined as probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2067; *Vasquez,* 830 S.W.2d at 949.

The first prong of *Strickland* requires us to determine whether trial counsel's performance failed to constitute reasonably effective assistance. The failure of counsel to request an accomplice witness instruction when the facts warrant such an instruction constitutes deficient performance. *See Ex parte Zepeda,* 819 S.W.2d 874, 875–77 (Tex. Crim.App.1991). In the instant case, Flores was an accomplice as a matter of law. Thus, I would hold that appellant's counsel's performance failed to constitute reasonably effective assistance when he failed to request an accomplice witness instruction.

The second prong of *Strickland* requires us to determine whether there is a reasonable probability that the result of the trial would have been different but for counsel's deficient performance. The circumstantial nature of the evidence precludes a conclusion *beyond a reasonable doubt* that the jury, in considering only the non-accomplice testimony, would have convicted appellant. There is a reasonable probability that, if the jury had been correctly charged and had been required to assess the non-accomplice evidence independently, the jury would not have convicted appellant. Accordingly, I would sustain appellant's third point of error.

Having found ineffective assistance of counsel, I would reverse the judgment of the trial court. Having found sufficient evidence to support the conviction, I would remand the case to the trial court for a new trial.

For the foregoing reasons, I respectfully dissent.

CHAVEZ and RODRIGUEZ, JJ., join in the dissent.