Opinion issued July 14, 2005



























In The
Court of Appeals
For The
First District of Texas




NOS. 01-04-00640-CR
          01-04-00641-CR




CHARLES W. HERRON, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause Nos. 964436 and 964437




MEMORANDUM OPINION

          Appellant, Charles W. Herron, was charged by indictment with two separate
offenses of possession of a controlled substance (namely, cocaine weighing at least
400 grams in cause number 964436, and cocaine weighing at least four but less than
200 grams in cause number 964437) with intent to deliver, each enhanced by a prior
conviction for felony possession of a controlled substance. He pleaded not guilty to
the primary offenses, but pleaded “true” to the enhancement. A jury found appellant
guilty, found the enhancement paragraph true, and assessed punishment at 35 years’
confinement in cause number 964436, and 27 years’ confinement with a $1,000.00
fine in cause number 964437. 
          In three issues, appellant contends that the evidence was legally and factually
insufficient to support his convictions and that the trial court erred in admitting
hearsay testimony.
          We affirm.
FACTS
          Drug Enforcement Agent Terrence Brown, working undercover, arranged to
purchase two kilograms of cocaine from Tracy Scott on May 13, 2003. Brown met
Scott at a restaurant that morning to plan the exchange, and the meeting was recorded
by police surveillance. When Scott left the restaurant, surveillance officers followed
him to an apartment belonging to Lyn Davis. 
          According to Davis, Scott arrived at his apartment asking for five kilograms
of cocaine. Davis contacted his friend, Forrest Cook. Cook told Davis that he only
had two kilograms available, and Davis determined that Scott and Cook needed to
talk face-to-face. Scott and Davis left together in Scott’s Toyota Sequoia, followed
by police surveillance. After stopping at Office Depot for a money marker, Scott and
Davis went to meet Cook at a house belonging to his mother, Kathleen Herron, on
Donovan Street. Cook and his brother, appellant, periodically lived there.
          Scott and Davis parked at the Donovan house and went into the open garage. 
Police surveillance stationed themselves across the street. Davis reported that he and
Scott sat in the garage on lawn chairs and talked with Cook about the two-kilogram
deal and the price. Cook then yelled to appellant, who was inside the house, and
asked him to “go to the house and pick up those two things.” 
          Police surveillance watched appellant leave in a blue Monte Carlo, return
approximately 25 minutes later, back up to the open garage door, and then open the
trunk. Davis testified that, inside the trunk, he saw two packages of cocaine inside
a black trash bag. Davis stated that he, Scott, and Cook spent several minutes looking
into the trunk and talking, and that appellant went into the house. Cook then took the
black trash bag out of the trunk and set it on a barbecue grill in the garage. 
          Davis testified that, moments later, Scott received a call from Brown, inquiring
about the delay, and Scott walked around the front of the house on his cell phone
during the call. Scott told Brown to come to the Donovan house to make the
exchange, but Brown refused. Brown instructed Scott to meet him at a Shell gas
station instead. 
          According to Davis, he and Scott got into the Sequoia, and Scott told Cook to
get “the stuff.” Davis testified that Cook told appellant to follow them to the gas
station. Cook then walked into the garage, picked up the black trash bag, carried it
to the Sequoia, and got into the back seat. Cook placed the bag under the driver’s
seat. Appellant got into the Monte Carlo and followed. Witnessing these events,
surveillance radioed Brown and the task force officers waiting at the gas station that
the Sequoia had three people in it and that the individual following in the Monte
Carlo appeared to be counter-surveillance.
          At the gas station, Scott parked the Sequoia next to Brown’s car and got out to
speak to him. Appellant parked behind the Sequoia at a gas pump, got out, and stood
next to the Monte Carlo while Scott talked with Brown. Brown went over to the
Sequoia and Scott showed Brown the two kilograms of cocaine inside the black trash
bag. Brown identified it by smell and packaging. Brown told Scott that he had to go
and call for the money, then gave the “bust signal” to the other officers. Police
moved in and arrested Scott, Davis, Cook, and appellant. 
          During the arrests, officers obtained keys to the Donovan house from appellant. 
Afterwards, the officers met up with the surveillance agents at the house and ordered
a search warrant. While they waited outside the house, an agent thought he saw a
person enter the house through the garage. The agents went to the door and knocked,
but nobody answered. They could hear scuffling going on inside and, fearing
destruction of the evidence, entered and performed a protective sweep of the house. 
Nobody was found inside. The agents came back outside and waited for the warrant. 
          While they were waiting, appellant’s mother arrived home from work. Agents
told her what had happened and requested consent to search the house. She agreed
and pointed out appellant’s bedroom. A canine unit was brought in and a dog alerted
on a shoe box jutting out from underneath appellant’s bed. Agents opened the box
and found a rock-like substance in bags, along with a pay-stub, some mail, and an
address list belonging to appellant. 
          The police chemist identified the cocaine recovered from the sale at the gas
station as 1.8 kilograms of powder cocaine and the rock-like substance found under
appellant’s bed as 37.5 grams of base-form cocaine. 
Possession with Intent to Deliver
          In his first and second issues, appellant contends that the evidence is legally
and factually insufficient to support his conviction because “the State failed to prove
the appellant committed possession with intent to deliver a controlled substance as
alleged in the indictments.” (Emphasis added). 
          In cause number 964436, appellant was convicted for his part in possessing and
intending to distribute cocaine to undercover agent Brown. This conviction relied in
part upon the testimony of accomplice-witness, Davis. Appellant briefs this issue as
a contention that the non-accomplice evidence was insufficient to show appellant had
intent to distribute. Appellant urges us to apply a traditional sufficiency review to his
issues. However, the Court of Criminal Appeals has declined to impose legal and
factual sufficiency standards on a review of accomplice-witness testimony. Cathey
v. State, 992 S.W.2d 460, 462-63 & n.3–4 (Tex. Crim. App. 1999) (concluding that
the sufficiency standards set out in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781
(1979) (regarding legal sufficiency) and Clewis v. State, 922 S.W.2d 126 (Tex. Crim.
App. 1996) (regarding factual sufficiency), are irrelevant to a review of the evidence
under article 38.14, defining accomplice-witness review).
          In cause number 964437, appellant was convicted of possession of cocaine
later found in his home. Appellant briefs this issue as a contention that the evidence
was insufficient to show possession with intent to distribute. Because there were no
accomplices involved in this charge, no accomplice-witness testimony was offered
and a traditional sufficiency review applies.
A.      Possession with Intent to Deliver to Agent Brown
 
          1.       Standard of Review
          In his first and second issues as to cause number 964436, a conviction cannot
be had upon the testimony of an accomplice unless it is corroborated by other
evidence tending to connect the defendant with the offense committed; the
corroboration is not sufficient if it merely shows the commission of the offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). We review the sufficiency of the
corroborative evidence by eliminating from consideration the testimony of the
accomplice witness and examining the testimony of other witnesses to determine
whether the non-accomplice evidence tends to connect the accused with the
commission of the offense. Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim.
App. 1997). Non-accomplice evidence need not directly link the accused to the
commission of the crime nor need be sufficient on its own to establish guilt beyond
a reasonable doubt. Cathey, 992 S.W.2d at 462. The standard is whether there is
“some non-accomplice evidence which tends to connect the accused to the
commission of the offense.” Hernandez, 939 S.W.2d at 176. (Emphasis added).
          2.       Possession of a Controlled Substance with Intent to Distribute
          To establish possession of a controlled substance, the State must prove beyond
a reasonable doubt that the defendant exercised care, custody, control, and
management over the substance, knowing that it was contraband. Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon Supp. 2004-2005). A person commits
an offense if he knowingly possesses with intent to deliver. Tex. Health & Safety
Code Ann. § 481.112(a) (Vernon 2003). 
          A person acts intentionally, with respect to the nature or result of his conduct,
when it is his conscious objective or desire to engage in the conduct or cause the
result. Tex. Pen. Code Ann. § 6.03(a) (Vernon 2003). Intent can be inferred from
the acts, words, and conduct of the accused. Patrick v. State, 906 S.W.2d 481, 487
(Tex. Crim. App. 1995). 
          A person is criminally responsible as a party to the offense if the offense is
committed “by his own conduct, by the conduct of another for which he is criminally
responsible, or by both.” Tex. Pen. Code Ann. § 7.01(a) (Vernon 2003). Each party
to the offense may be charged with its commission. Id. § 7.01(b). A person is
criminally responsible for the conduct of another if, acting with the intent to promote
or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid another person to commit the offense. Id. § 7.02(a)(2). 
          3.       The Non-accomplice Testimony

          The State offered evidence from the investigating and arresting police officers
to corroborate that appellant possessed the contraband and assisted in its distribution. 
The evidence shows that surveillance officers recorded the conversation at the
restaurant in which Agent Brown arranged to purchase two kilograms of cocaine from
Scott. Agent Furay testified that he followed the Sequoia from the restaurant to
Davis’s apartment, then to the Donovan house, where Furay stationed himself across
the street. Furay saw Scott and Davis go into the garage for awhile, then saw
appellant get into the Monte Carlo and leave. Shortly thereafter, Furay saw appellant
return and back the Monte Carlo into the driveway, up to the garage door. Furay saw
appellant open the trunk, then saw appellant, Cook, and Scott standing at the trunk
and “reaching in the vehicle and looking into the back of the vehicle.” Furay saw
Scott on a cellular phone in the front yard at the time Brown was talking to Scott. 
Furay saw Scott and Davis get into the Sequoia, and then saw Cook carry a black
trash bag from the garage to the Sequoia and get into the back seat. Furay saw
appellant get into the blue Monte Carlo and follow the Sequoia “directly behind” as
it pulled away. 
          In addition, the evidence shows that the Sequoia and the Monte Carlo drove 
“in tandem” to the gas station, where Brown had arranged to meet them. The Sequoia
was parked next to Brown’s car, and Scott got out and approached Brown. The
Monte Carlo was parked just behind the Sequoia at the gas pumps, and appellant got
out but did not pump gas or go toward the store; rather, appellant stood next to his car
while Scott talked with Brown. Brown went over to the Sequoia where Scott showed
him the two packages of cocaine wrapped in a black trash bag. After agreeing to the
purchase, Brown gave the signal for the arrest.
          When we eliminate from consideration the testimony of Davis, the accomplice
witness, the non-accomplice testimony, on its own, tends to connect appellant with
the commission of the offense. See Hernandez, 939 S.W.2d at 176. While the non-accomplice evidence need not directly link appellant to the commission of the crime,
there must be some non-accomplice evidence tending to connect him with the
offense. See Solomon v. State, 49 S.W.3d 356, 361(Tex. Crim. App. 2001). 
          In determining whether the non-accomplice evidence connects the defendant
to the crime, each case must be considered on its own facts. Munoz v. State, 853
S.W.2d 558, 559 (Tex. Crim. App. 1993). Proof that a defendant was present at the
scene of a crime coupled with other suspicious circumstances may tend to connect to
the commission of the offense. Cruz v. State, 690 S.W.2d 246, 250–51 (Tex. Crim.
App. 1985).
          In this case, although Furay testified that he could only see appellant, Scott, and
Cook looking and reaching into the back of appellant’s vehicle, shortly thereafter,
Furay witnessed Scott exiting appellant’s garage carrying a black garbage-type bag,
that was later found to contain the two kilograms of cocaine. Scott, Davis, and Cook
put the bag into the Sequoia and proceeded to the gas station, where the drug
transaction occurred, with appellant following “directly behind.” 
          At the gas station, appellant parked within a few feet of the Sequoia, exited his
car, and did nothing more than observe the transaction. Agent Brown testified that
appellant’s conduct, in following the accomplice vehicle and remaining close at hand
during the drug transaction, was a common countersurveillance tactic to provide
protection. The above facts, considered in their entirety, are sufficient to tend to
connect appellant with the offense committed. See Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2003).
          We overrule appellant’s first and second issues as to the conviction in cause
number 964436.
B.      Possession with Intent to Deliver Cocaine Found in House 
          In his first and second issues, appellant also contends that the evidence was
legally and factually insufficient to support his conviction in cause number 964437
because the State failed to establish that he possessed or had intent to distribute the
cocaine found in his possession at the house.
          1.       Standard of Review
          A legal-sufficiency challenge requires us to determine whether, after viewing
the evidence in the light most favorable to the verdict, any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Howley v. State, 943 S.W.2d 152,
155 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Although our analysis considers
all of the evidence presented at trial, we may not re-weigh the evidence and substitute
our judgment for that of the fact finder. King v. State, 29 S.W.3d 556, 562 (Tex.
Crim. App. 2000).
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144
S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481–82. Our evaluation may not intrude upon the fact-finder’s role as the sole judge
of the weight and credibility accorded any witness’s testimony. Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what
weight to place on contradictory testimonial evidence, as it depends on the fact-finder’s evaluation of credibility and demeanor. Id. at 408. As the determiner of the
credibility of the witnesses, the fact-finder may choose to believe all, some, or none
of the testimony presented. Id. at 407. In conducting a factual-sufficiency review,
we must discuss the evidence that, according to appellant, most undermines the jury’s
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). 
          The standards of review for legal and factual sufficiency challenges are the
same for direct and circumstantial evidence cases. Sharp v. State, 707 S.W.2d 611,
614 (Tex. Crim. App. 1986). 
          2.       Possession with Intent to Distribute 
          As discussed above, to establish possession of a controlled substance, the State
must prove beyond a reasonable doubt that the defendant exercised care, custody,
control, or management over the substance, knowing that it was contraband. Tex.
Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2004–2005); Brown v.
State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). A person commits an offense
if he knowingly possesses with intent to deliver. Tex. Health & Safety Code
Ann. § 481.112(a) (Vernon 2003). 
          A person acts intentionally, with respect to the nature or result of his conduct,
when it is his conscious objective or desire to engage in the conduct or cause the
result. Tex. Pen. Code Ann. § 6.03(a) (Vernon 2003). Intent can be inferred from
the acts, words, and conduct of the accused. Patrick, 906 S.W.2d at 487.
          3.       Legal Sufficiency
          In his first issue, appellant contends that the evidence is legally insufficient to
support his conviction because it failed to establish that he possessed or had intent to
distribute the cocaine found in his possession at the house. Specifically, appellant
contends that the evidence was insufficient to show possession because he was not
present when the house was searched and did not technically live there anymore. In
addition, he contends, that the evidence was insufficient to show intent to distribute
because only a small amount of money was found and no drug paraphernalia was
recovered.
          To show possession, the State is merely required to show an “affirmative link
between appellant and the drug” to the degree that a reasonable inference may arise
that appellant had knowledge of the existence of the contraband and exercised control
over it. See Dubry v. State, 582 S.W.2d 841, 843 (Tex. Crim. App. 1990). We
consider the totality of the circumstances and not the number of links to determine if
appellant is affirmatively linked to the contraband. See Gilbert v. State, 874 S.W.2d
290, 298 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). 
          Drug Enforcement Agent Tony Scott testified that, after the arrests at the gas
station, he and several agents went to the Donovan house and waited on a search
warrant. However, while they waited, appellant’s mother arrived and consented to
a search. Appellant’s mother led officers and a canine unit to what she stated was
appellant’s bedroom. There, the sniffing dog alerted on a box jutting out from
underneath appellant’s bed. 
          Inside the box were rocks of crack cocaine and items belonging to appellant—a
paycheck stub, a piece of mail, and a handwritten address list. The presence of
documents in appellant’s name found with the cocaine provides a link between
appellant and the contraband. See Herrera v. State, 561 S.W.2d 175, 178-79 (Tex.
Crim. App. 1978). The paycheck stub is dated April 11, 2003, a few weeks before
the events in question, and appellant’s address is listed as 1326 W. Donovan, his
mother’s house. This evidence supports an inference that appellant lived at his
mother’s house at the time in question. Further, because appellant’s mother regarded
the bedroom as appellant’s, this suggests that appellant had control over the place
where the drugs were found, which is another affirmative link. See Villegas v. State,
871 S.W.2d 894, 896–97 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d). Further,
Houston Police Officer Darrin Bush testified that over 35 grams of rock cocaine was
recovered from the box. Bush testified that, in his experience, the value of that
quantity was $600-$700 and would have a street value of over $200,000 after
processing. The high value of the contraband supports an inference that appellant had
knowledge of the its existence. See id. at 897. 
          We conclude that this evidence supports a reasonable inference that appellant
had knowledge of the contraband and exercised control over it. See Dubry, 582
S.W.2d at 843. Hence, he possessed the rock cocaine found under his bed.
          Intent to deliver a controlled substance may be proven by circumstantial
evidence. Williams v. State, 902 S.W.2d 505, 507 (Tex. App.—Houston 1994, pet. 
ref’d). We consider the following factors:
          (1)     where the defendant was arrested and the nature of the location;
          (2)     the quantity of controlled substance in defendant’s possession;
          (3)     the manner of packaging;
          (4)     the presence of drug paraphernalia associated with use or sale;
          (5)    the defendant’s possession of large amounts of cash; and
          (6)     the defendant’s status as a drug user.

Id.
          The evidence shows that police went to the Donovan house because appellant
had just been arrested nearby for possession and distribution of cocaine. In addition,
as discussed above, the evidence shows that agents found over 35 grams of rock
cocaine under appellant’s bed, having a potential street value of “$200,000 or more,
depending on how you mixed.” Further, agents found the rocks of crack cocaine
separated into at least two plastic bags along with a small amount of cash and an
address list. Agent Bush testified that these factors, taken together, could indicate an
intent to distribute. 
          Appellant argues that the amount of cash found was not significant and the
address list was inconclusive. However, the amount of substance, cash, or lack of
paraphernalia is not a threshold for the State’s proof. Id. at 508. The trier of fact is
the exclusive judge of the facts, the credibility of witnesses, and the weight to be
given their testimony. Sharp, 707 S.W.2d at 614; Williams, 902 S.W.2d at 507. The
trier of fact is entitled to accept one version of the events and reject another and may
accept or reject any portion a witness’s testimony. Sharp, 707 S.W.2d at 614;
Williams, 902 S.W.2d at 507.
          Viewing the evidence in the light most favorable to the verdict, a reasonable
trier of fact could have found beyond a reasonable doubt that appellant possessed a
controlled substance with intent to deliver. 
          We overrule appellant’s first issue as to the conviction in cause number
964437.
          4.       Factual Sufficiency
          In his second issue, appellant contends the evidence is factually insufficient to
support his conviction because the State failed to establish that he possessed or had
intent to distribute a controlled substance, namely cocaine, that was found at the
Donovan house. Specifically, as to cause number 964437, appellant solely argues
that he did not reside at his mother’s house at the time of the events and that the
cocaine more likely belonged to his brother, Cook. 
          As discussed above, the State provided evidence that appellant possessed
cocaine with intent to distribute.
          When the accused is not in exclusive control of the place where the substance
is found, there must be additional independent facts and circumstances which
affirmatively link appellant to the contraband and show that he had knowledge or
control. See Wiersing v. State, 571 S.W.2d 188, 190 (Tex. Crim. App. 1978). 
However, as discussed above, there are ample facts to support an inference that
appellant did live at his mother’s house on Donovan during the events in question and
this evidence further provides affirmative links between appellant and the crack
cocaine found in the box underneath his bed.
          We overrule appellant’s second issue as to the conviction in cause number
964437.
Hearsay
          In his third issue, appellant contends the trial court erred in admitting certain
testimony by Lyn Davis, the accomplice-witness because “[d]efense counsel
requested a running and continuous objection to hearsay statements made by Forrest
Cook or Tracy Scott.” Specifically, appellant complains of the following exchange:
[State]:Now did you hear Craig talk to Charles Herron
during this time?
 
[Davis]:Charles was in the house. And he called CJ. He
called—I mean, Charles Herron, he called him. 
 
[State]:And what did he say?
 
[Davis]:He just wanted him to go to the house and pick up
those two things for him.
 
[State]:Okay. Called them two things? 
 
[Davis]:Yeah. That’s basically—that’s all he said.
 
          [State]:                   And did Charles Herron do that? 
 
[Davis]:He left in the car.
 
          [State]:                   He left in the blue Monte Carlo?
 
[Davis]:Yes.
 
          [State]:                   Was that the blue Monte Carlo?
 
[Davis]:Yes.

          Appellant contends that allowing this testimony was harmful because “those
two things” were later described by Davis as “a little black trash bag” and “another
like a cream-colored one or brownish-colored one that the stuff was sitting inside of
that bag.” These statements, appellant contends, imply that appellant was knowingly
involved with possession with intent to distribute.
          Generally, when an appellant wishes to claim that the trial court erred in
admitting evidence by the State, the error must have been preserved by a proper
objection and a ruling obtained on the objection. Tex. R. App. P. 33.1; Tex. R. Evid.
103(a)(1). One exception is that a continuous or running objection can properly
preserve error. Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). 
          The evidence shows that, in front of the jury, during Davis’s testimony
concerning the phone call he made to Cook to set up the transaction between Scott
and Cook, defense counsel requested and was granted a running and continuous
objection to “hearsay statements made by Forrest Cook or Tracy Scott.” Appellant
asserts that this objection extends to later statements by Davis concerning the “two
things.” Even if we conclude that error was preserved as to this later testimony in this
separate context, appellant’s claim is still without merit.
          Rule of Evidence 801(e)(2)(E) provides an exception to the general
inadmissibility of hearsay as follows: “A statement is not hearsay if . . . the statement
is offered against a party and . . . is a statement by a co-conspirator of a party during
the course and in the furtherance of the conspiracy.” Tex. R. Evid. 801(e)(2)(E).
          When two or more people participate in the commission of a felony, the co-conspirator exception to the hearsay rule will apply, even though, as here, the
substantive crime of conspiracy is not charged in the indictment. See Meador v.
State, 812 S.W.2d 330, 332 (Tex. Crim. App. 1991); Wilkerson v. State, 933 S.W.2d
276, 279–80 (Tex. Crim. App.—Houston [1st Dist.] 1996, pet. ref’d) (partial
publication).
          Proof that appellant was acting with Scott, Davis, and Cook in selling the
cocaine is sufficient to establish a conspiracy. See Roy v. State, 608 S.W.2d 645, 651
(Tex. Crim. App. 1980). Hence, the court was entitled to rely on Davis’s statements.
          We hold that the trial court did not abuse its discretion in admitting the
testimony.
          We overrule appellant’s third issue.
 
 
 
 
 
CONCLUSION
          We affirm the trial court’s judgments.
 

                                                   Laura Carter Higley
                                                   Justice
 
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.
Do not publish. Tex. R. App. P. 47.2(b).