In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00186-CR


______________________________




RODNEY PAUL TOUPS, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 402nd Judicial District Court


 Wood County, Texas


Trial Court No. 18,812-2005




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Rodney Paul Toups appeals from the adjudication of his guilt for the offense of burglary of
a habitation. (1) See Tex. Penal Code Ann. § 30.02 (Vernon 2003). The trial court sentenced Toups
to fifteen years' imprisonment. Toups was represented by appointed counsel at trial and by different
appointed counsel on appeal. Toups' appellate attorney has filed a brief in which he concludes that
the appeal is frivolous and without merit, after a review of the record and the related law.

 Appellate counsel states that he has studied the record and finds no error preserved for appeal
that could be successfully argued. The brief contains a professional evaluation of the record and
advances one arguable ground for review. This meets the requirements of Anders v. California, 386
U.S. 738 (1967); Stafford v. State, 813 S.W.2d 503 (Tex. Crim. App. 1991); and High v. State, 573
S.W.2d 807 (Tex. Crim. App. [Panel Op.] 1978).

 Counsel mailed a copy of the brief to Toups on February 25, 2008, informing Toups of his
right to examine the entire appellate record and to file a pro se response. Counsel simultaneously
filed a motion with this Court seeking to withdraw as counsel in this appeal. This Court notified
Toups that any pro se response was due on or before March 31, 2008. Toups filed two motions to
extend time to file his pro se response, which were both granted, making his pro se response due
June 5, 2008. Toups has not filed a response, nor has he requested additional time in which to file
such a response. 

 We have determined that this appeal is wholly frivolous. We have independently reviewed
the clerk's record and the reporter's record, and we agree that no arguable issues support an appeal. 
See Bledsoe v. State, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

 We affirm the trial court's judgment. (2)


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 10, 2008

Date Decided: July 11, 2008


Do Not Publish
1. Toups also has a companion appeal before this Court, cause number 06-07-00185-CR, in
which he appeals his adjudication of guilt for the offense of assault against a public servant.
2. Since we agree this case presents no reversible error, we also, in accordance with Anders,
grant counsel's request to withdraw from further representation of Toups in this case. No substitute
counsel will be appointed. Should Toups wish to seek further review of this case by the Texas Court
of Criminal Appeals, Toups must either retain an attorney to file a petition for discretionary review
or Toups must file a pro se petition for discretionary review. Any petition for discretionary review
must be filed within thirty days from the date of either this opinion or the last timely motion for
rehearing that was overruled by this Court. See Tex. R. App. P. 68.2. Any petition for discretionary
review must be filed with this Court, after which it will be forwarded to the Texas Court of Criminal
Appeals along with the rest of the filings in this case. See Tex. R. App. P. 68.3. Any petition for
discretionary review should comply with the requirements of Rule 68.4 of the Texas Rules of
Appellate Procedure. See Tex. R. App. P. 68.4.



160;                                               



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Facts and Procedural History
            Late in the evening of May 11, 2002, Trooper Greg Hollingsworth with the Texas
Department of Public Safety (DPS) pulled over a car driven by Donna Richardson on Interstate 30,
about two hours east of Dallas. The car was rented from a leasing agency in Dallas; it had been
leased to Richardson's cousin, Beverly Norris. Richardson was listed as an approved driver on the
rental agreement. Appellant, Barry Jerome Hall, who was riding in the front passenger's seat of the
car, was not an approved driver. Hollingsworth stopped the vehicle for speeding. On making
contact with Richardson and Hall, Hollingsworth noticed that Richardson was very nervous, even
after he advised she would be issued a warning, not a speeding ticket. Hall failed to make eye
contact with Hollingsworth. These circumstances, combined with the late hour and the fact that
Dallas had shown, in Hollingsworth's experience, to be a source city of illegal narcotics trafficking,
aroused his suspicions. He asked Richardson for consent to search the vehicle, and she agreed.
            In the trunk, Hollingsworth found a large blue cooler containing drinks and snacks. The
cooler also held ice, and Hollingsworth noticed that the ice was not melted. Reaching under the ice,
Hollingsworth found two bricks of cocaine wrapped in duct tape. The cocaine weighed 1.97
kilograms.
            Richardson pled guilty to a first-degree felony of possession of a controlled substance,
cocaine, in an amount more than 400 grams. She was placed on deferred adjudication and was
required to testify at Hall's trial. 
            Hall testified in his own defense and denied any knowledge of the cocaine or the cooler in
the trunk. Hall testified that the trip to Dallas was Richardson's idea, that he never put anything in
the trunk, and that Richardson's trial testimony was all lies. 
            The jury convicted Hall and later assessed his punishment at sixty years' confinement and a
fine of $40,000.00. The court sentenced Hall accordingly.
Hall's Points of Error
            On appeal, Hall raises four points of error: (1) legal sufficiency of the evidence; (2) failure
to instruct the jury that the testimony of the accomplice witness must be corroborated;
(3) insufficient corroboration of accomplice Richardson's testimony; and (4) ineffective assistance
of counsel at his trial.
            We find that the evidence was legally sufficient, but also find that Hall did suffer egregious
harm because the trial court did not instruct the jury on the accomplice witness rule. We further find
that trial counsel's representation fell below a reasonable standard of competence, thereby
prejudicing Hall. We reverse Hall's conviction and remand the case to the trial court for a new trial.
1.         Legal Sufficiency of Evidence
            Hall complains there was insufficient evidence to prove he was guilty of possession of more
than 400 grams of a controlled substance. The evidence is legally sufficient if, when viewing the
relevant evidence in the light most favorable to the verdict, any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319 (1979); Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). In our review, we must
evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or
inadmissible. Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). 
            In sum, the following evidence was presented to the jury:
Richardson testified that she lives in Little Rock, Arkansas; that she became acquainted with
Hall, who always drove rental cars; and that Hall was not employed. In May 2002, Hall
called her and asked her to ride with him to Dallas, Texas. She went along to visit her sister. 
Hall picked her up in a rental car, and he drove to Dallas. After arriving in Dallas,
Richardson went to her sister's house, and Hall was to call her when he was ready to return
to Little Rock. Later that day, Hall called and said he could not charge another rental car on
his credit card and asked her cousin to rent the car so they could return home. Her cousin,
Beverly Norris, knew Hall and agreed to rent the vehicle. Richardson obtained the rental car
after her cousin rented it, then picked up Hall. Hall asked for the keys to the automobile. 
They went to a Target store, and Hall purchased a cooler. Hall then placed the cooler in the
trunk. They went to a gasoline station and purchased ice. Hall put a bag of ice in the cooler
in the trunk. Richardson "had a pretty good idea . . . there was something in there that I didn't
want to see" "possibly" drugs. They then left Dallas traveling toward Little Rock. There was
no doubt in her mind Hall knew exactly what he was going to put in the cooler in the trunk
of the car.
 
Hollingsworth found the 1.97 kilograms of cocaine in a cooler located in the trunk of the
vehicle in which Hall was a passenger.
 
Hollingsworth testified that Dallas is a source city for narcotics and that Interstate 30 is often
used as a route on which illegal narcotics are transported.
 
Hall would not make eye contact with Hollingsworth and continued to look straight ahead
as Hollingsworth talked to him.
 
Hall lied to Hollingsworth about previous arrests.

            Rental cars are commonly used by drug runners.
 
A cooler with ice is a technique used to foil drug dogs.
 
The cooler was in the trunk, inaccessible to the car's occupants, despite containing food and
drinks, while the parties' luggage was in the back seat.
 
Neither Richardson nor Hall seemed surprised when they were arrested.
 
After Hollingsworth read Hall his Miranda


 rights and asked him about the drugs and cooler
in the car, Hall said he did not know to whom the cooler belonged, and "I'm ready to go" and
"put me in the car."
 
A pager, two cell phones, and a walkie-talkie type radio were in the car. 
The jury was presented with Hall's explanation of events leading up to the drugs being found in the
car, and it was free to evaluate Hall's credibility.
            Although there was error in failing to instruct the jury about the need for accomplice
Richardson's testimony to be corroborated (as we discuss later in this opinion), in evaluating the legal
sufficiency, we review the evidence received and the elements of the offense as defined by the
hypothetically-correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)
(sufficiency of the evidence is measured by the elements of the offense as defined by the
hypothetically-correct jury charge which, inter alia, is authorized by the indictment). When
considered, we believe the evidence is legally sufficient to support the verdict. Richardson testified
Hall initiated the trip, purchased the cooler and ice, and placed them in the trunk where the drugs
were found. Other circumstances that Hollingsworth testified were indicative of "moving narcotics"
were that Hall was in a rental car, it was late at night, and he was traveling from a known source of
drugs. He was a passenger in the vehicle where the drugs were located and was evasive in
responding to the officer. Cell phones and a walkie-talkie type radio were located in the car. We
find the evidence is legally sufficient. 
2.         Accomplice Witness Instruction
            a.         Error
            Hall complains the trial court erred in failing to include an instruction on the accomplice
witness rule in the court's charge. Richardson drove the car and had pled guilty to the same felony
with which Hall was charged, and was therefore an accomplice as a matter of law. See State v.
Trevino, 930 S.W.2d 713 (Tex. App.—Corpus Christi 1996, pet. ref'd). Where the evidence clearly
shows a witness is an accomplice as a matter of law, the trial court must so instruct the jury, but if
the appellant fails to object to the omission of the instruction, as in Hall's case, he or she must prove
egregious harm to prevail on appeal. Solis v. State, 792 S.W.2d 95, 98 (Tex. Crim. App. 1990). 
Egregious harm results from errors that deny the defendant a "fair and impartial trial," "go to the very
basis of the case," deprive the defendant of a "valuable right," or "vitally affect his defensive theory." 
Almanza v. State, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984) (op. on reh'g). "Egregious harm is
a difficult standard to prove and such a determination must be done on a case-by-case basis." Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); see Batiste v. State, 73 S.W.3d 402, 407
(Tex. App.—Dallas 2002, no pet.). In reviewing the trial court's failure to instruct the jury on the
accomplice witness rule, we examine the record for evidence corroborating the accomplice witness
testimony. If the evidence "clearly warrants conviction independent of the accomplice testimony,
the court's failure to instruct on the law of accomplice testimony is not reversible error." Hall v.
State, 937 S.W.2d 580, 586 (Tex. App.—Texarkana 1996, pet. ref'd), citing Solis, 792 S.W.2d at 98. 

            A person may not be convicted on the testimony of an accomplice unless there is other
evidence tending to connect the defendant to the crime. Tex. Code Crim. Proc. Ann. art. 38.14
(Vernon 1979). The corroboration is not sufficient if it merely shows that a crime was committed. 
Id. The test is whether, after excluding the accomplice's testimony, there is other evidence of an
incriminating character, which tends to connect the defendant with the commission of the offense. 
Burks v. State, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994); Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993); Reed v. State, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988).
            A trial court must give the jury "a written charge distinctly setting forth the law applicable
to the case . . . ." Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004–2005). The trial
court should have instructed the jury that it could not convict Hall of possession of a controlled
substance unless there was evidence other than Richardson's testimony which tended to connect Hall
with the offense of possession of the 1.97 kilograms of cocaine in the trunk of the car.
            b.        Harm
            However, in this case, Hall did not object to the failure to give an accomplice witness
instruction, and under Almanza is required to prove that the failure to properly instruct the jury
caused him "egregious harm." The Texas Court of Criminal Appeals has stated that the accomplice
witness instruction is given to inform the jury that it cannot use the accomplice witness testimony
unless there is also some nonaccomplice evidence connecting the defendant to the offense. Herron
v. State, 86 S.W.3d 621, 631–32 (Tex. Crim. App. 2002). Nonaccomplice evidence can render
harmless a failure to submit an accomplice witness instruction by fulfilling the purpose of the
instruction. Id. at 632. A harmless error analysis for the omission of the accomplice witness
instruction should be flexible, taking into account the existence and the strength of any
nonaccomplice evidence and the applicable standard of harm. Id. Under the egregious harm
standard, the omission of an accomplice witness instruction is generally harmless unless the
corroborating (nonaccomplice) evidence is "so unconvincing in fact as to render the State's overall
case for conviction clearly and significantly less persuasive." Id., citing Saunders v. State, 817
S.W.2d 688, 692 (Tex. Crim. App. 1991). We point out that this case is not one wherein a proper
accomplice witness instruction was given and raises a question on appeal as to whether the
corroborating evidence tended to connect the crime to the defendant. In that instance—the jury
having been properly instructed that the accomplice witness testimony must be corroborated—great
deference should be given to its determination that such corroborating evidence existed. 
            Here, the jury had no such instruction and was authorized, by the jury charge, to convict Hall
with no corroborating evidence. The combination of the omission of a proper accomplice witness
rule jury instruction and extremely weak evidence corroborating the accomplice may result in a
significantly less persuasive case for conviction. See Saunders, 817 S.W.2d at 692.
            To determine the sufficiency of the corroboration, whether an objection was made, we
eliminate the testimony of the accomplice witness and examine the testimony of the other witnesses. 
See Taylor v. State, 7 S.W.3d 732, 737 (Tex. App.—Houston [14th Dist.] 1999, no pet.). In
determining the strength of the particular item of nonaccomplice evidence, we must examine (1) its
reliability or believability, and (2) the strength of its tendency to connect the defendant to the crime. 
Herron, 86 S.W.3d at 632. We consider the nonaccomplice testimony to be reliable. The important
issue is the strength of the evidence in its tendency to connect the defendant to the crime.
            We believe the nonaccomplice testimony provides a weak inference that Hall was in
possession of the drugs found in the cooler in the trunk of the car. The mere presence of a defendant
at the scene of the crime is insufficient to corroborate accomplice witness testimony. Torres v. State,
137 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2004, no pet.). The State relies on Hall's
conduct at the scene, namely that Hall failed to make eye contact with Trooper Hollingsworth, Hall
was slouched in the passenger's seat of the car, and he "lied" to Hollingsworth, saying he had never
been arrested. However, in the videotape of the interaction between Hollingsworth and Hall, Hall
almost immediately corrected himself and admitted having been arrested for "possession" of a "little
'ol joint," which we take to mean a misdemeanor arrest for possession of marihuana. Admittedly,
this is significantly less noteworthy than Hall's two felony convictions for possession of a controlled
substance. However, we find Hall's conduct has a weak tendency to connect him with the possession
of cocaine found in the rental car's trunk. 
            Likewise, the fact that Hall refused to make eye contact with Hollingsworth and slouched in
his seat is extremely weak in its tendency to connect him with the offense. It is true that "other
suspicious circumstances," when coupled with the accused's presence at the scene of the crime, may
tend to connect an accused with an offense to such an extent as to corroborate an accomplice witness'
testimony. The evidence presents only a tenuous connection to Hall having possession of cocaine. 
He had no drugs or paraphernalia on his person, and he did not have large sums of cash. He was not
driving the vehicle, did not control it, and had not rented it. The fact that he was traveling on an
interstate highway leaving Dallas, Texas, is very weak, if any, support for the conclusion that he was
in possession of drugs. The nonaccomplice witness testimony may raise some suspicion or question
by a trained officer as to whether a crime is being committed, but it has a very weak tendency to link
Hall to such a crime. The corroboration must do more than tend to prove that a crime was
committed: corroborating evidence must tend to connect the particular person charged to the crime. 
Eliminating accomplice Richardson's testimony, there is very little evidence which could adequately
corroborate that witness' testimony. This is not to say there was no evidence, outside of the
accomplice witness, to support the conviction, but the State's case rested substantially on the
testimony of Richardson. The jury instruction was extremely important to the outcome of the case. 
Considering the weak nature of the nonaccomplice testimony to connect Hall to the crime and the
importance of the accomplice witness' testimony, we believe a correct jury charge explaining the
accomplice witness rule would have made the State's case much less persuasive. See Howard v.
State, 972 S.W.2d 121, 128 (Tex. App.—Austin 1998, no pet.).
            It is clear that Hall was prejudiced by the failure to instruct the jury on the accomplice
witness rule. As stated above, it was clearly error for the trial court not to instruct the jury on the law
relevant to the case at bar. Hall's defense at trial was that he had not known about the drugs in the
trunk and that Richardson had care, custody, and control over the rental car and its contents,
specifically the contents in the trunk. By failing to properly instruct the jury that Richardson's
testimony must be corroborated, Hall's defensive theory was vitally affected and egregious harm
resulted. See Almanza, 686 S.W.2d at 172.
            We find that, under the facts of this case, the trial court's error in failing to instruct the jury
on the law applicable to the case prejudiced Hall's right to a fair trial and resulted in egregious harm. 
3.         Sufficiency of Evidence Corroborating Accomplice Witness Testimony

            Hall also complains there was insufficient evidence to corroborate the accomplice witness,
Richardson's, testimony. We have discussed most of the elements of this claim already. As stated
above, we find that, had a correct jury charge been given, there is legally sufficient evidence for a
rational jury to find all of the elements of this crime beyond a reasonable doubt. However, in light
of the facts of this case, failure to give the jury instruction on accomplice witness corroboration
amounted to egregious harm. We overrule this point of error.
4.         Ineffective Assistance of Counsel
            Finally, Hall appeals the effectiveness of his trial counsel. When ineffective assistance is
raised on direct appeal, appellate counsel and the court must proceed on a trial record not developed
for the object of litigating or preserving the claim, and thus it is often incomplete or inadequate for
this purpose. Freeman v. State, 125 S.W.3d 505, 506 (Tex. Crim. App. 2003). Some claims may
be disposed of on direct appeal where "trial counsel's ineffectiveness is so apparent from the record." 
Id. at 507, citing Massaro v. United States, 538 U.S. 500, 508 (2003). After careful analysis, and
cognizant of the Texas Court of Criminal Appeals' cautious eye toward such claims made on direct
appeal, we nonetheless find this to be a case where counsel's errors have undermined confidence in
the trial's outcome. 
            The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in Hernandez v.
State, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective
assistance, an appellant must, by a preponderance of the evidence, prove: (1) trial counsel's
performance fell below an objective standard of reasonableness, and (2) counsel's deficient
representation prejudiced appellant's defense. Strickland, 466 U.S. at 688; Bone v. State, 77 S.W.3d
828, 833 (Tex. Crim. App. 2002); Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999). To
meet this burden, an appellant must show that the attorney's representation fell below the standard
of prevailing professional norms and that there is a reasonable probability that, but for the attorney's
deficiency, the result of the trial would have been different. Tong v. State, 25 S.W.3d 707, 712 (Tex.
Crim. App. 2000). In other words, the appellant must prove counsel's representation so undermined
the proper functioning of the adversarial process that the trial cannot be relied on as having produced
a just result. Strickland, 466 U.S. at 686. If, however, "there is at least the possibility that the
conduct could have been legitimate trial strategy," then we must "defer to counsel's decisions and
deny relief on an ineffective assistance claim on direct appeal." Murphy v. State, 112 S.W.3d 592,
601 (Tex. Crim. App. 2003).
            Our review of counsel's representation is highly deferential, and we indulge a strong
presumption that counsel's conduct falls within a wide range of reasonable representation. 
Strickland, 466 U.S. at 689; Tong, 25 S.W.3d at 712. An appellate court should not second-guess
through hindsight the strategy of counsel at trial, nor will the fact that another attorney might have
pursued a different course support a finding of ineffectiveness. Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979). That another attorney, including appellant's counsel on appeal, might have
pursued a different course of action does not necessarily indicate ineffective assistance. Harner v.
State, 997 S.W.2d 695, 704 (Tex. App.—Texarkana 1999, no pet.). Any allegation of
ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate
the alleged ineffectiveness. Thompson v. State, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). 
            a.         Failure to Request Instruction on Accomplice Witness Testimony
            Counsel did not request a jury instruction that the accomplice witness testimony must be
corroborated. The failure of counsel to request an accomplice witness instruction when facts warrant
such an instruction may constitute deficient performance. Henson v. State, 915 S.W.2d 186, 197
(Tex. App.—Corpus Christi 1996, no pet.), citing Ex parte Zepeda, 819 S.W.2d 874, 877 (Tex.
Crim. App. 1991); see Hernandez v. State, 907 S.W.2d 654, 660 (Tex. App.—Corpus Christi 1995,
pet. filed) (Hinojosa, J., dissenting). We have previously discussed the weak nature of the evidence
corroborating the testimony of Richardson. In such instance, it is even more crucial that a jury be
properly instructed on this issue. Here, the jury was authorized to convict Hall without any
corroborating evidence, which relieved the State from proving the portion of its case that would have
been the most difficult to prove. Under the facts of this case, which have been fully discussed
previously, we find the failure to request a proper accomplice witness jury instruction to be deficient
performance by defense counsel. 
            b.        Failure to Object to Evidence of Unadjudicated Offenses
            Hall points to several other instances of his trial counsel's conduct that support a finding of
ineffectiveness. Chief among these is counsel's failure to object to the State's references to Hall's
arrests for unadjudicated offenses or to request a limiting instruction be given to the jury for the
extraneous arrests. During the guilt/innocence phase of the trial, while cross-examining Hall, the
State was allowed to ask him how many times he had been arrested. Hall stated, "[t]wice plus this
one be three." Then the following interchange occurred:
Q[Prosecutor] Okay. In 1992 there in Little Rock, Arkansas, you were arrested
for credit card fraud, weren't you?
 
A[Hall] No, sir.
 
QIn 1994 you were arrested for aggravated assault, engaging in violent criminal
activity, unlawfully discharging of a firearm from a vehicle, weren't you?
 
AI wasn't convicted of it. 
 
Q I'm sorry?
 
AI wasn't convicted of that.

                        . . . .
 
Q. . . . Do you understand my question? Have you been arrested in 1994 for
aggravated assault? Yes or no?
 
AYes.

                        . . . .
 
QWere you arrested for unlawfully discharging a firearm from a vehicle? Yes
or no? 

                        Drive-by shooting is what that's commonly called, right? Right?
 
AI guess.
 
QEngaging in violent criminal activity. That would [be] gang-banging, right,
Mr. Hall? That's what you'd call it on the street, wouldn't you, Mr. Hall?
 
AI have no recollection of that, sir.

            No evidence was offered that Hall had been convicted of credit card abuse, aggravated
assault, engaging in violent criminal activity, or unlawfully discharging a firearm from a vehicle. 
Hall's trial counsel never objected, and the State continued to question Hall, referring to the
unadjudicated offenses as "gang-banging" and "drive-by shooting." Specifically, the State mentioned
Hall's alleged history of "gang-banging" at least five times in the span of six pages of cross-examination. This conduct was alleged to have happened about 1992 or 1994; Hall once said he was
in the tenth grade when it happened, later in the twelfth. The State next questioned Hall about his
felony convictions in March 1996 for delivery of a controlled substance. Later, the State attempted
to show Hall a copy of a charging instrument from the (unproved) charges of aggravated assault,
engaging in violent criminal activity, and unlawfully discharging a firearm from a vehicle. A short,
unrecorded bench conference was held, and the State ceased this line of questioning and passed the
witness. 
            Hall's felony convictions were admissible when he took the stand. See Tex. R. Evid. 609. 
The trial court and Hall's trial counsel warned Hall that his prior convictions could be admitted if he
testified. Of a different cloth, though, is the introduction of alleged prior bad acts by Hall as many
as eleven years before the instant trial. If extraneous offense evidence is not relevant apart from
supporting inference of character conformity, it is inadmissible. Montgomery v. State, 810 S.W.2d
372, 390 (Tex. Crim. App. 1990) (op. on reh'g). We can find no basis for the admission of the
unadjudicated offenses of credit card abuse, aggravated assault, engaging in violent criminal activity,
or unlawfully discharging a firearm from a vehicle. There was no showing that Hall was ever found
guilty of any of these offenses, and there was no evidence offered to show beyond a reasonable doubt
Hall committed these offenses. Evidence of other "crimes, wrongs or acts" may be admissible if it
has relevance apart from its tendency to prove the character of a person in order to show that he or
she acted in conformity therewith. Tex. R. Evid. 404(b). A party may introduce such evidence
where it logically serves to make more or less probable an elemental fact or an evidentiary fact that
inferentially leads to an elemental fact. Bishop v. State, 869 S.W.2d 342, 346 (Tex. Crim. App.
1993); Montgomery, 810 S.W.2d at 387–88. The extraneous offenses introduced by the State had
nothing to do with the offense charged in this case. They were clearly objectionable and
inadmissible. As they had no probative value regarding the charged offense, they were prejudicial
and, on proper objection, should not have been admitted.
            The question is whether failure to object to these alleged bad acts constitutes ineffective
assistance of counsel. Extraneous offenses are inherently prejudicial, and when counsel fails to
object to numerous extraneous and prejudicial matters, counsel is ineffective. Brown v. State, 974
S.W.2d 289, 293 (Tex. App.—San Antonio 1998, pet. ref'd), citing Williams v. State, 662 S.W.2d
344, 346 (Tex. Crim. App. 1983); Cude v. State, 588 S.W.2d 895 (Tex. Crim. App. 1979); Wenzy
v. State, 855 S.W.2d 52, 58 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). There was no
showing of how charges of credit card fraud, aggravated assault, engaging in violent criminal
activity, and unlawfully discharging a firearm from a vehicle would have been admissible or relevant
to Hall's charged crime of possession of more than 400 grams of cocaine.


 As there was no possible
basis for the admission of previous bad acts by Hall (of which he had not been convicted), trial
counsel was deficient in failing to object. Cf. Ortiz v. State, 93 S.W.3d 79, 93 (Tex. Crim. App.
2002), cert. denied, 538 U.S. 998 (2003) (to base a claim of ineffective assistance on counsel's
failure to object to admission of evidence, claimant must show the evidence was not admissible;
defendant's membership in a prison gang admissible to prove access to heroin and rebut defense's
impeachment evidence).
            c.         Failure to Object to State's Comment on Post-Arrest Silence
            Hall claims trial counsel was ineffective for failing to object to comments of the State during
opening and closing arguments. The State said that, after being arrested, Hall "chose not to" give
a statement or explanation to the officer. After Hollingsworth received consent from Richardson to
search the vehicle, he can be heard going through the ice in the cooler. He then placed Hall, then
Richardson, under arrest, read them their Miranda rights separately, and also separately asked each
to whom the cooler belonged and what was in the cooler. 
            As seen on the videotape exhibit of the stop, Hall had clearly been arrested and read his
Miranda rights. His comments to the effect of "put me in the car" and "I'm ready to go," together
with a statement that he did not wish to speak to Hollingsworth further without consulting a lawyer,
clearly indicate Hall's intent to avail himself of his right to remain silent. The Fifth Amendment to
the United States Constitution protects post-arrest silence after Miranda warnings have been given,
and the Texas Constitution protects a defendant's post-arrest silence even before such warnings have
been administered. Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004), citing
Fletcher v. Weir, 455 U.S. 603 (1982); Doyle v. Ohio, 426 U.S. 610, 618 (1976) (that the Fifth
Amendment to the United States Constitution protects post-arrest silence after Miranda warnings
are given); Sanchez v. State, 707 S.W.2d 575, 582 (Tex. Crim. App. 1986) (that the Texas
Constitution protects a defendant's post-arrest silence even before Miranda warnings have been
given). The State referred to Hall's silence in the opening statement and closing argument. The
State's comments were objectionable, and had Hall's trial counsel made a timely objection, the trial
court would have been obligated to sustain such objections. 
            d.        Do These Errors Amount to Ineffective Assistance?
            We have identified three discernible deficiencies on the part of trial counsel.


 Although we
regard trial counsel's performance with deference and consider the totality of his representation, a
full inquiry into the strategy or tactics of counsel should be made only if, from all appearances after
trial, there is no plausible basis in strategy or tactics for counsel's actions. See Johnson v. State, 614
S.W.2d 148, 152 (Tex. Crim. App. [Panel Op.] 1981); Ex parte Burns, 601 S.W.2d 370, 372 (Tex.
Crim. App. 1980); Stenson v. State, 695 S.W.2d 569, 571 (Tex. App.—Dallas 1984, no pet.). 
            We are well aware of the difficulties in evaluating trial counsel's competency on direct
appeal, and generally such claims are better pursued in the arena of habeas corpus.


 We cannot
envision a reason for counsel's failure to request an instruction on accomplice witness testimony, for
allowing the State to question Hall about unadjudicated offenses, or for failing to object to comments
by the State about Hall's post-arrest silence. We next consider whether, but for these deficiencies,
there is a reasonable probability that the result of the trial would have been different. Strickland, 466
U.S. at 694; Hernandez, 907 S.W.2d at 660 (Hinojosa, J., dissenting). 
            The Strickland prejudice prong requires the defendant to show that there is "a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different." Strickland, 466 U.S. at 694. A reasonable probability is a probability sufficient to
undermine the court's confidence in the outcome. Id. When addressing this second step of
Strickland, the reviewing court should examine counsel's errors not as isolated incidents, but in the
context of the overall record. Bridge v. State, 726 S.W.2d 558, 571 (Tex. Crim. App. 1986). 
            Even on direct appeal, without any record of Hall's trial counsel's reasons or strategies, we
conclude there could be no sound basis for certain aspects of his representation. Failing to object
to the omission of an accomplice witness instruction allowed the jury to convict without any
corroborating evidence. The facts of this case, particularly, demanded that a jury have the proper
instruction requiring corroboration of the accomplice witness testimony. Allowing the State to cross-examine Hall, without objection, about previous charges and arrests, not clearly related or relevant
to the instant crime, and refer to the charges as "drive-by shooting" and "gang-banging" and using
them in jury argument was extremely and unfairly prejudicial. Commenting on Hall's failure to offer
an explanation of the drugs in the trunk, after Hall had received his Miranda warnings and told
Hollingsworth he did not want to continue the interview, was likewise prejudicial error. After
considering the combined effects of these failures by counsel, we find counsel's deficient
performance prejudiced Hall's defense and so undermined the trial process that the trial cannot be
relied on as having produced a just result. We find there is a reasonable probability that, but for
counsel's deficiencies during trial, the result would have been different.
            We reverse the judgment and remand this case to the trial court for a new trial.
 

                                                                        Jack Carter
                                                                        Carter
 
Date Submitted:          December 8, 2004
Date Decided:             January 25, 2005

Publish