# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00244-CR

**Christopher Hamilton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 390TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-18-904056, THE HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Christopher Hamilton of one count of murder and two counts of aggravated robbery. *See* Tex. Penal Code §§ 19.02(b), 29.03(a). Appellant was sentenced to twenty years' imprisonment for each count, with the sentences running concurrently. In four points of error, appellant contends that the evidence was insufficient to corroborate the accomplice witness testimony and that the judgments contain clerical errors requiring correction. For the following reasons, we modify the trial court's judgments to correct clerical errors and, as modified, affirm the judgments of conviction.

## BACKGROUND[1]

The jury heard evidence that on the night of June 8, 2017, Jason Macabe and Cutberto Moran-Ayala were in a parked vehicle in a parking lot of an apartment complex off St. Elmo Street in South Austin, at which time Macabe and Moran-Ayala were robbed at gunpoint and Moran-Ayala was shot twice. After discovering that Moran-Ayala had been shot during the incident, Macabe drove him to Moran-Ayala's apartment on Exchange Drive. EMS and the police were dispatched to that location as well as the apartment complex off St. Elmo Street. EMS attempted life-saving procedures on Moran-Ayala, but he was pronounced dead at the scene.

Based on their investigations, which included obtaining physical descriptions of the suspects, the police determined that three men were involved in the robberies and murder: Akeem Bradford, Savon Galloway, and an individual named Chris, Ron, or Rari. Bradford was arrested in the early morning hours following the commission of the crimes and cooperated with the investigation. The police also obtained an arrest warrant for Galloway and located him at a different apartment later that day. After they observed him and another man, who was later identified as appellant, step out briefly and then go back inside the apartment, officers surrounded the apartment in tactical gear, and several of them at the front of the apartment yelled for the occupants to come out of the apartment. In response, three women and a child exited, but the men remained in the apartment despite the officers continuing to ask them to step outside and advising them of Galloway's arrest warrant. A SWAT team arrived approximately forty minutes

[1] Because appellant does not challenge the sufficiency of the evidence supporting his convictions, we provide only a general overview of the facts of the case. *See King v. State*, 953 S.W.2d 266, 267 (Tex. Crim. App. 1997). We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. The facts recited are taken from the testimony and other evidence presented at trial.

later, gave similar verbal instructions to the apartment's occupants to step outside, and then entered the apartment with shields and deployed tear gas rounds into the door of a bathroom on the second floor. Shortly after that, Galloway and appellant exited from the bathroom and were taken into custody. Appellant was subsequently arrested and indicted for the aggravated robberies of Macabe and Moran-Ayala and the murder of Moran-Ayala.[2]

The State's witnesses during the trial's guilt/innocence phase included Macabe and Bradford, who remained in jail facing charges arising from the murder and aggravated robberies. Macabe testified that he drove to the apartment off St. Elmo Street in South Austin in a four-door Jeep Cherokee while Moran-Ayala was in the front passenger seat communicating by phone to someone that he was "coming" and providing driving directions to Macabe because Macabe was unfamiliar with South Austin.[3] When they arrived at the apartment complex, Macabe saw "three gentlemen with hoodies" "kind of huddled in a dark area."[4] After Macabe parked the Jeep, a man opened the rear door on the passenger side and got into the back seat. Macabe "figured out" that Moran-Ayala was planning to sell marijuana to the man, but during the drug transaction, a second man appeared on the driver's side of the Jeep with a gun and tapped the gun against the front driver's window. The man in the backseat told them "it's a robbery" and demanded that they "give" "everything [they] got." Macabe also saw "a shadow at the end of [his] jeep" "kind of like lurking" and "felt like it was somebody at the end of [his]

---

[2] Appellant was indicted for capital murder, murder, and two counts of aggravated robbery, but the State waived the count of capital murder and proceeded to trial on the other counts.

[3] He testified that he was "not from South Austin," "[did not] deal with South Austin," and "[did not] know anything about South Austin."

[4] He also described what he saw as "three shadows just kind of lurking in the dark."

3

Jeep." Macabe threw his wallet and cell phone into the backseat, but Moran-Ayala refused to comply with the demand to give up his property, and the driver's side rear window was broken and gunshots were fired. Macabe heard multiple gunshots being fired during the incident with the "first shot [coming] from the back window." After the driver's side rear window was "broke[n]," the man who tapped his gun on the window "lean[ed] all the way in" the Jeep from that window, and a struggle occurred between him and Moran-Ayala over the gun with Moran-Ayala gaining control of it and the men running away. Macabe was able to reverse the Jeep and drive away with Moran-Ayala, but he discovered that Moran-Ayala had been shot and was losing consciousness. He then drove them to Moran-Ayala's apartment. The gun that Moran-Ayala had taken during the incident remained in the Jeep.

Bradford testified that he found someone who was selling marijuana on the internet and asked him to come to the apartments off St. Elmo Street and that he, Galloway, and appellant had agreed to rob the "weed-dealer," who was later identified to be Moran-Ayala. According to Bradford, both appellant and Galloway had guns, and he believed that appellant had a .40 caliber semi-automatic pistol and Galloway had a nine-millimeter. The agreed-upon plan was for Bradford to get in the back seat and for Galloway and appellant "to come up to the car and with their guns out and just rob the car while [he was] in it." In accordance with this plan, Bradford got in the back seat on the passenger side of the Jeep, and Galloway and appellant came up to the Jeep with their guns out. The dealer (Moran-Ayala) and Galloway, however, started "tussling" over Galloway's gun, and it went off. The dealer "got control" of the gun and "pointed it out the window," and appellant was "right there" and "fired two shots and hit the dude." Galloway, Bradford, and appellant ran away from the Jeep in different directions, but they got back together and ran an errand "a few minutes after the shooting."

4

The State's witnesses also included police officers and detectives who testified about their various roles in responding and investigating the crimes and a woman who testified that she lived in the apartment complex off St. Elmo Street, called 911 on the night of the incident after hearing gunshots, and saw a "car speeding off" and "three African-American gentlemen running from different directions of the apartment complex."[5] A detective testified about locating Galloway at the different apartment the following day and taking him and appellant into custody with the assistance of the SWAT team. A latent print examiner testified that Galloway's left palm print was found on the driver's side front door of the Jeep and a print of appellant's right little finger was found on the exterior of the driver's side rear door handle of the Jeep. The evidence showed that the Jeep was "very clean" and "had been recently detailed" but that the "driver rear door window had been shattered, and glass pieces were on the driver rear back seat and floorboard area." The police also recovered a nine-millimeter handgun from the floorboard of the Jeep, a missing trigger to the nine-millimeter handgun that appeared to have been struck by a bullet, a hollow-point nine-millimeter projectile on the passenger front seat, nine-millimeter shell casings, and other projectile fragments. Testimony was offered that without the trigger, the gun was not capable of being fired. Additionally, the police recovered two .40 caliber cartridge casings and one live .40 caliber round near where the Jeep was parked but did not locate an additional firearm. The firearm examiner identified the projectile fragment found on the passenger front seat as having characteristics consistent with a .40 caliber handgun and testified that "a .40 caliber cannot physically be fired safely or physically by

---

[5] Another witness for the State was the chief medical examiner who performed the autopsy on Moran-Ayala. He confirmed that Moran-Ayala had been shot twice and concluded that the cause of death was gunshot wounds.

a nine-millimeter caliber pistol." The defense did not call witnesses during the guilt/innocence phase.

The jury charge allowed the jury to convict appellant on several different theories as to each count and either as a principal or party. *See* Tex. Penal Code §§ 7.01 (describing parties to offense), 7.02 (describing criminal responsibility for conduct of another). The jury found appellant guilty of one count of murder and two counts of aggravated robbery. *See id*. §§ 19.02(b), 29.03(a). After hearing additional evidence, the jury assessed punishment at confinement for twenty years in the Texas Department of Criminal Justice on each count, and the court entered judgments of conviction accordingly. Appellant filed a motion for new trial, which was overruled by operation of law, and this appeal followed.

## ANALYSIS

**Accomplice Witness Testimony**

In his first point of error, appellant argues that the evidence was insufficient to corroborate the accomplice witness testimony of Bradford. He argues that the State's evidence "only demonstrated that appellant was merely present at the scene and may have fled from the scene" and that the State "adduced no evidence whatsoever that corroborated [Bradford]'s testimony that appellant participated in the planning or in the actual commission of the crimes."

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. art. 38.14. "Under this rule, the reviewing court eliminates all of the accomplice testimony from consideration and then examines the remaining portions of the record to see if

6

there is any evidence that tends to connect the accused with the commission of the crime." *Castillo v. State*, 221 S.W.3d 689, 691 (Tex. Crim. App. 2007) (citing *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)); *see also Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) ("This accomplice witness rule creates a statutorily imposed review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards.").

"The corroborating evidence need not be sufficient by itself to establish guilt; there simply needs to be 'other' evidence 'tending to connect' the defendant to the offense." *Castillo*, 221 S.W.3d at 691; *see also Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007) (explaining that corroborating evidence need not tend to connect defendant to every element of crime or establish exact nature of defendant's involvement whether as principal or party). We view the non-accomplice evidence in the light most favorable to the verdict and determine whether a reasonable juror could conclude that this evidence, taken as a whole, tends to connect the defendant to the offense. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994).

As support for his position, appellant relies on the inability of the testifying witnesses to the crimes, Macabe and the women who called 911, to identify appellant as a participant. He also argues that Macabe's testimony of a "shadow" or figure near the rear of the Jeep "only provides the argument that appellant may have been present at the scene" and "not evidence that he participated in the crimes" and that his fingerprint on the Jeep "does not provide evidence of anything more than merely being present at the scene." *See Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) ("[M]ere presence alone of a defendant at the scene of a crime is insufficient to corroborate accomplice testimony." (citation omitted)). But "proof that the accused was at or near the scene of the crime at or about the time of its

commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Id.*

The evidence showed that the Jeep had been recently detailed and was "very clean," Macabe and Moran-Ayala were at the apartment off St. Elmo only a short time, two guns were involved in the incident, a nine-millimeter and a .40 caliber, and appellant's fingerprint was found on the driver's side rear door handle of the Jeep, the precise location where the door's window was broken and from which shots were fired. *See Rogers v. State*, 461 S.W.2d 399, 402 (Tex. Crim. App. 1970) (stating that suspicious circumstances may include defendant's lack of apparent reason for being present at scene of crime); *see also Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011) (explaining that opportunity evidence is insufficient on its own but that it may be considered in connection with other evidence that tends to connect accused to crime); *Hernandez v. State*, No. 03-10-00863-CR, 2013 Tex. App. LEXIS 8410, at *13–16 (Tex. App.—Austin 2013, no pet.) (mem. op., not designated for publication) (determining that standard required for corroboration of jailhouse informant testimony is same as that required for accomplice witness testimony and concluding that evidence, which included that appellant was present at time of murder and had opportunity to intervene to help victim but did not, "taken together" was sufficient to corroborate jailhouse informant testimony). Based on this evidence, the jury reasonably could have concluded that appellant had not touched the Jeep's door handle at some other time but during the incident and, therefore, that he was actively involved in the commission of the crimes.

Appellant also did not report the incident to the police. *See Cox v. State*, 830 S.W.2d 609, 612 (Tex. Crim. App. 1992) (considering evidence that defendant was present for offense but did not report it to authorities until questioned by police among evidence that

court found to be sufficient to corroborate accomplice witness testimony). And the evidence showed that appellant and Galloway were together the following day at the different apartment and refused to comply with the directives from the police and SWAT team to step outside, requiring the SWAT team to force entry into the apartment and deploy tear gas to take them into custody. *See Smith*, 332 S.W.3d at 445 (considering evidence of accused's behavior before and after murders "to constitute independent circumstances that tend[ed] to connect her to the murders"); *Simmons v. State*, 282 S.W.3d 504, 511 (Tex. Crim. App. 2009) (considering evidence tending to prove defendant's consciousness of guilt among evidence that tended to connect defendant to offense); *Gill*, 873 S.W.2d at 48–49 (collecting cases where Court of Criminal Appeals found sufficient corroboration based in part on defendant and accomplice being together within several hours of offense); *Jackson v. State*, 745 S.W.2d 4, 13 (Tex. Crim. App. 1988) ("Although the presence of the accused in the company of the accomplice, near the time of the offense, while alone is not conclusive it nevertheless is an important factor in determining corroboration."); *Barnes v. State*, 62 S.W.3d 288, 301–02 (Tex. App.—Austin 2001, pet. ref'd) (concluding that there was sufficient corroboration from evidence that included defendant's palm print found on vehicle, failure to report to work or collect paycheck after offense, and failure to surrender to authorities until month later).

Viewing the non-accomplice evidence, taken as a whole, in the light most favorable to the jury's verdict, we conclude that a reasonable juror could have found Bradford's testimony to be sufficiently corroborated. *See Gill*, 873 S.W.2d at 48. Accordingly, we overrule appellant's first point of error.

9

**Clerical Errors in Judgments**

In his second, third, and fourth points of error, appellant contends that the judgments of conviction contain clerical errors, and the State agrees. The judgment of conviction for murder erroneously states that the "Statute for Offense" is section 19.02(c) of the Penal Code. The statute for murder as alleged in this case is section 19.02(b) of the Penal Code. The judgments of conviction for the two counts of aggravated robbery also state erroneously that the "Statute for Offense" is section 19.02(c) of the Penal Code. The statute for aggravated robbery as alleged in this case is section 29.03(a) of the Penal Code.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See* Tex. R. App. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we sustain appellant's second, third, and fourth points of error and modify the judgment for murder to state that the "Statute for Offense" is section 19.02(b) of the Penal Code and modify the judgments for the two counts of aggravated robbery to state that the "Statute for Offense" is section 29.03(a) of the Penal Code.

## CONCLUSION

For these reasons, we modify the judgments as noted above to correct clerical errors and affirm the trial court's judgments of conviction as modified.

                                        _____
                                        Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Modified and, As Modified, Affirmed

Filed:   April 14, 2021

Do Not Publish